298 S.E.2d 874

**Acel MEADOWS**

v.

**The EMPLOYERS' FIRE INS. CO.**

**No. 15252.**

Supreme Court of Appeals of
West Virginia.

Dec. 15, 1982.

Huffman & Huffman, L.C. and Timothy E. Huffman, Charleston, for appellant.

Steptoe & Johnson and E. Loyd Leckie, Charleston, for appellee.

MILLER, Chief Justice:

The appellant in this case, Acel Meadows, brings this appeal to challenge the lower court's dismissal of a suit brought by Meadows against The Employers' Fire Insurance Company. Meadows and the insurer had contracted in 1971 for the latter to insure a building owned by the appellant, and the building subsequently burned on or about April 15, 1972. Meadows' insurance claim was denied on October 17, 1972. On February 21, 1979, he filed suit to collect on the policy. The Circuit Court of Braxton County dismissed the appellant's suit, holding that the action was barred by the twelve-month limitation on actions specified in the fire insurance contract.

The appellant argues two points—first, that we should hold that the general statute of limitations for suits involving written contracts, which provides for a ten-year period of limitation, should apply; and, second, that we should hold that the limitation involved in the standard New York Fire Policy violates public policy under principles of unconscionability. We decline to uphold either ground.

## I.

We begin by noting that W.Va.Code, 33–17–2 (1957), provides, in part, that:

"No policy of fire insurance covering property located in West Virginia shall be made, issued or delivered unless it conforms as to all provisions and the sequence thereof with the basic policy commonly known as the New York standard fire policy, edition of one thousand nine hundred forty-three, which is designated as the West Virginia standard fire policy." [1]

The standard policy consists of 165 numbered lines.[2] Prior to the enactment of our present statute, the standard fire policy was set out verbatim in W.Va.Code, 33–4–7 (1931).[3] The provisions relating to proof of loss, which begin on line 90 of the current standard fire policy and run through line 165, are virtually identical to the provisions found in W.Va.Code, 33–4–7 (1931), which begin opposite the heading "Requirements in case of loss" and proceed to the end of the statutory policy provisions. In this area, the twelve-month limitation period is set out together with other relevant provisions.

When W.Va.Code, 33–17–2 (1957), was enacted, the Legislature removed the detailed policy language formerly contained in W.Va.Code, 33–4–7 (1931), and simply referred to the New York standard policy. This was part of a comprehensive revision of the insurance chapter, W.Va.Code, 33–1–1, et seq.[4] Among the revisions made was the inclusion of W.Va.Code, 33–6–14 (1957), which generally provided that, as to insurance policies delivered in this State, no provision could be made which would limit the time for bringing an action under the policy to a period of less than two years.[5] Two specific exceptions were made in this statute. The first concerned marine insurance where the limitation could not be less than one year. The other exception was that the provisions of this statute "shall not apply to the standard fire insurance policy." [6]

1. The statute goes on to authorize certain multiple line coverages so long as the fire portion contains language at least as favorable to the insured as the standard policy.

2. W.Va.Code, 33–17–2, provides that the Commissioner of Insurance shall maintain a true copy of the standard fire policy on file in his office.

3. W.Va.Code, 33–4–7 (1955), contains the same provisions as the 1931 Code.

4. 1957 W.Va.Acts Ch. 97.

5. Prior to 1957, W.Va.Code, 33–2–29 (1931), prohibited an insurance company from limiting the period in which a suit could be instituted to less than one year.

6. The material portion of W.Va.Code, 33–6–14, is:

"No policy ... issued ... in West Virginia covering a subject of insurance ... located ... in West Virginia, shall contain any condition, stipulation or agreement ... limiting the time within which an action may be brought to a period of less than two years from the time the cause of action accrues in connection

Several things are apparent from this brief statutory review. For a considerable period prior to 1957, the Legislature had, by statute, set out the provisions of the standard fire policy which contained two standard provisions which still exist in today's standard fire policy, i.e. the twelve-month limitation period[7] and the loss payable provision.[8]

In 1967, the Legislature adopted by reference the 1943 New York standard fire policy which contains these two provisions. At the same time, the Legislature changed the statute which had prohibited insurance contracts from reducing the time in which suit could be instituted to a period under one year by extending the period to two years but providing that the standard fire policy was exempt.

Obviously, the Legislature was aware that, as of 1957, the standard fire policy, as set out in W.Va.Code, 33–4–7 (1931), contained a twelve-month limitation period and for this reason the standard fire policy was exempted from the two-year requirement of W.Va.Code, 33–6–14 (1957). Judge Haden reached a similar conclusion in *Prete v. Royal Globe Insurance Co.*, 533 F.Supp. 332 (N.D.W.Va.1982). Finally, we believe that the enactment of W.Va.Code, 33–6–14 (1957), and its forerunner, W.Va.Code, 33–2–29 (1931), both of which dealt with limiting the time for bringing suits, indicates that the Legislature did not intend to have the general contract statute of limitations of W.Va.Code, 55–2–6 (1923), apply to insurance policies.

Furthermore, this interpretation is consistent with our prior case law recognizing that the Legislature, by adopting a standard fire policy, had in effect legislatively set the limitation period contained in the standard policy. This is the result reached in *Kirk v. Firemen's Insurance Company of Newark, N.J.*, 107 W.Va. 666, 150 S.E. 2 (1929), which appears to be the first case decided after the Legislature enacted a standard fire insurance policy form. The insurance company argued in *Kirk* that the court should abandon its previous position where it had construed similar language of an insurance policy (not legislatively adopted) to mean that the twelve months did not begin to run until sixty days after the submission of the proof of loss. The insurance carrier in *Kirk* reasoned that with the legislative adoption of the standard policy, the Court was free to make a new interpretation. The Court refused to do this, stating:

"The answer to this proposition is, first, that the general principles of construction apply alike to statutes and contracts, and second, that statutes are to be read in the light of attendant circumstances and the state of the law existent at the time of their enactment. The words of the statute must be taken in the sense in which they were then understood. 25 R.C.L., 959. And this should be especially true when such meaning has been established by judicial interpretation. The Legislature, therefore, in prescribing the New York Standard form of policy is presumed to have adopted the previous interpretations of its provisions by this Court." 107 W.Va. at 668, 150 S.E. at 2.

Although *Kirk* did not quote the applicable provisions of the standard fire policy, it did note that fire policy provisions were

---

with all insurances other than marine insurances; in marine policies such time shall not be limited to less than one year from the date of occurrence of the event resulting in the loss. Any such condition, stipulation or agreement shall be void, but such voidance shall not affect the validity of the other provisions of the policy. *This section shall not apply to the standard fire insurance policy.*" (Emphasis added)

7. The language of the limitation of suit clause is:
   "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

8. The loss payable clause provides:
   "The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided."

those as amended by 1923 W.Va.Acts Ch. 18.[9] The Court in *Kirk* placed primary reliance on an earlier case, *Hogl v. Aachen Insurance Co.*, 65 W.Va. 437, 64 S.E. 441 (1909), where the Court had dealt with policy language somewhat similar to the statutory language considered in *Kirk*. The key holding in both cases was that the twelve-month limitation language was not absolute since the policy provided that the company did not have to pay the loss until sixty days after receipt of the proof of loss. In Syllabus Point 1 of *Kirk*, the law was summarized in this fashion:

> "The period of limitation for the institution of suit under the New York Standard fire insurance policy, providing that loss shall be payable sixty days after proof and that no action shall be maintainable unless commenced within the twelve months after the fire, does not begin to run until the accrual of the cause of action, sixty days after the proof of loss."

Oddly enough, this Court has not had occasion since *Kirk* to consider the standard fire policy limitation for filing suit. The insurance company in the present case maintains that the true statute of limitation, as a result of *Kirk* and particularly in view of the recent federal district court case, *Prete v. Royal Globe Insurance Co.*, *supra*, is twelve months plus sixty days. We do not agree.

As previously noted, *Kirk* recognized in Syllabus Point 1 that the twelve months did not begin until sixty days after proof of loss. What was left unstated in *Kirk* was that the proof of loss, under the statutory

policy provisions existing at the time of *Kirk*, was required to be sent "within sixty days after the fire, unless such time is extended in writing by this Company." [10] The same provision exists in the present standard policy.[11] It is apparent from *Kirk* that with the insured having sixty days to furnish proof of loss and the company having sixty days after receipt of such proof of loss, the tolling period under *Kirk* could be 120 days.

The Court in *Kirk* did not consider the complete language of the loss payable clause which provides that "[t]he amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company *and* ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided." (Emphasis added) This language demonstrates that the company's obligation to pay is not triggered solely at the end of the sixty days after the proof of loss is received but also requires an "ascertainment of the loss ... either by agreement" *or* "by the filing ... of an award." [12]

This language is apparently designed to protect the company against having to unilaterally accept the amount set out in the insured's proof of loss and authorizes and permits an agreed ascertainment of the loss. Alternatively, the amount of the loss can be determined by an award. The use of the term "award" is explained in the appraisal provision of the standard policy. Under this section, if the insured and the

---

**9.** The applicable provisions of this legislation, which are remarkably similar to the current standard fire policy (*see* notes 7 and 8, *supra*), are:

> "The amount of loss or damage for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss or damage is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided.
> "No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been

complied with, nor unless commenced within twelve months next after the fire."

**10.** 1923 W.Va.Acts Ch. 18, lines 133–35.

**11.** The applicable language, from the present standard policy is: "[A]nd within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss."

**12.** This is the present language of the loss payable clause; *see* note 8, *supra*, for its complete text. It is virtually the same as the 1923 Act on which *Kirk*, *supra*, was based. *See* note 9, *supra*.

company cannot agree on the amount of loss, either party may trigger the selection of appraisers who then agree on "[a]n award in writing." [13]

From a practical standpoint, it is obvious that these provisions are designed to permit the parties to resolve the amount of the loss either by mutual agreement or by an appraiser's award. *Kirk* recognized that the time limitation for filing suit clause had to be read in light of the loss payable clause language: "This court has held that the two provisions should be construed together and that when so construed the period of limitation does not begin to run until the accrual of the cause of action, 60 days after the proof of loss." 107 W.Va. at 667, 150 S.E. at 2.

Several courts have taken the approach utilized in *Kirk*,[14] with the leading case being *Peloso v. Hartford Fire Insurance Co.*, 56 N.J. 514, 267 A.2d 498 (1970). There, the New Jersey Supreme Court, after noting the provision in its standard fire policy for filing proof of loss within sixty days and the loss payable clause, concluded that there was some incongruity between these provisions and the limitation clause requiring suit to be commenced within twelve months next after the inception of the loss:

"The fair resolution of the statutory incongruity is to allow the period of limitation to run from the date of the casualty but to toll it from the time an insured gives notice until liability is formally declined. In this manner, the literal language of the limitation provision is given effect; the insured is not penalized for the time consumed by the company while it pursues its contractual and statutory rights to have a proof of loss, call the insured in for examination, and consider what amount to pay; and the central idea of the limitation provision is preserved since an insured will have only 12 months to institute suit." 56 N.J. at 521, 267 A.2d 501–02.

The Michigan Supreme Court in *Tom Thomas Organization, Inc. v. Reliance Insurance Co.*, 396 Mich. 588, 242 N.W.2d 396 (1976), drew heavily on *Peloso* in arriving at the same result. The Alaska Supreme Court in *Fireman's Fund Insurance Co. v. Sand Lake Lounge, Inc.*, 514 P.2d 223 (Alaska 1973), has also concluded that a twelve-month period from the date of the denial of the loss was appropriate. The Nevada Supreme Court has come to this same conclusion in construing language of an insurance policy similar to the standard fire policy although Nevada had no statute setting a standard fire policy. *Clark v. Truck Insurance Exchange*, 95 Nev. 544, 598 P.2d 628 (1979).

Even among those courts which purport to give strict adherence to the twelve-month limitation of suit provision, there is a recognition that this period will be extended if the insurance company by negotiations or other actions induces the insured to delay filing suit. *E.g., Huff v. Travelers Indemnity Co.*, 266 Ind. 414, 363 N.E.2d 985 (1977); *Agricultural Insurance Company of Watertown, N.Y. v. Iglehart*, 386 P.2d 145 (Okl.1963); *Anderson v. State Farm Fire & Casualty Company*, 583

---

**13.** This provision in the current standard policy states:

"In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally."

This provision is substantially the same as that formerly contained in W.Va.Code, 33–4–7 (1931), and in 1923 W.Va.Acts Ch. 18.

**14.** There is a split of authority on whether the twelve-month limitation clause for filing suit should be tempered by the loss payable clause. *See* Annot., 95 A.L.R.2d 1023 (1964).

**342**

P.2d 101 (Utah 1978). This rule is designed to give recognition to the fact that where the insurance company does not deny coverage for the fire loss but is only controverting the dollar value of the loss, the insured should not be penalized by a literal reading of the twelve-month period provision by counting the negotiation period.

 This point is even more crucial where the company chooses to exercise its appraisement rights, because until the appraiser's award is made the company is not required to decide whether it will pay the amount of the loss. The loss payable provision puts the company in control of when it will pay the amount of the loss, since its obligation to pay arises only when the company ascertains the amount of the loss by agreement with the insured or by the appraiser's award. As *Kirk* suggests, the insured should not be chargeable with the time consumed during this period. Moreover, by adopting a rule that the twelve-month period begins when the company notifies the insured that it declines to pay the amount of the loss claimed to be due, the company is still in control of when the twelve-month period starts to run by virtue of deciding how promptly it will notify the insured that it declines to pay the loss. We therefore conclude that under the provisions of the standard fire policy adopted under W.Va.Code, 33–17–2 (1957), the twelve-month time period for bringing suit commences to run when the insurance company notifies the insured in writing that it declines to pay the loss.

## II.

In view of our conclusion that the standard fire policy is legislatively authorized, we do not find merit in the appellant's argument that concepts of contractual unconscionability are applicable. Our cases in this area rest generally on the disparity between the bargaining position of the parties. *Hill v. Joseph T. Ryerson & Son, Inc.*, 165 W.Va. 22, 268 S.E.2d 296 (1980); *Board of Education v. W. Harley Miller, Inc.*, 160 W.Va. 473, 236 S.E.2d 439 (1977); *Ashland Oil, Inc. v. Donahue*, 159 W.Va. 463, 223 S.E.2d 433 (1976). Because the standard fire policy in this State arises from legislative enactment, neither the insured nor the insurance company is in any direct bargaining position over the policy provisions. Consequently, the concept of contractual unconscionability based on the unequal bargaining position of one of the parties is not applicable.

In the present case, the trial court was correct in granting summary judgment under the agreed facts. The denial of coverage on October 17, 1972, occurred some six months after the date of the loss. The insured did not institute suit until February 1979. For the foregoing reasons, we affirm the judgment.

Affirmed.