Loren McCULLOUGH, d/b/a Magic Dragon Restaurant, petitioner, Appellant,

v.

The TRAVELERS COMPANIES, Respondent.

No. C9–87–909.

Supreme Court of Minnesota.

June 17, 1988.

Rehearing Denied Aug. 22, 1988.

Kenneth F. Johannson, Mark E. O'Boyle, Crookston, for appellant.

Charles L. Noel, Ian C. Ritts, Minneapolis, for respondent.

YETKA, Justice.

This is an appeal from a decision of the court of appeals, 415 N.W.2d 349, which affirmed the trial court's order for summary judgment in favor of respondent-defendant insurer, Travelers Companies. We reverse and remand for trial.

The undisputed facts contained in the record are as follows: The insured, appellant-plaintiff Loren McCullough, operated a business known as Magic Dragon Restaurant in Thief River Falls, Minnesota. On July 22, 1984, the restaurant was destroyed by a gas explosion and fire. An investigation immediately ensued by the state fire marshal, the Bureau of Criminal Apprehension, and Travelers. As part of the investigation, on August 3, 1984, the insured submitted to a tape-recorded examination by an agent of Travelers. As a result of the investigation, Ami Huseth, an employee of the insured, was charged with arson in connection with the fire.

On November 26, 1984, the insured submitted a proof of loss statement to Travelers. By a letter dated December 7, 1984, Travelers demanded an oral examination of the insured on December 19, 1984, pursuant to a policy provision which requires the insured to submit to examinations under oath upon Travelers' demand.[1] The in-

---

1. The relevant policy provision, which is re-       quired by Minn.Stat. § 65A.01, subd. 3 (1986)

sured's attorney, however, notified counsel for Travelers that he would not be available on that date due to a trial conflict. In a letter to the insured's attorney confirming this notification, Travelers' counsel wrote:

> As we discussed, you were unavailable for the examination under oath on December 19, 1984, due to the fact that you were in trial on a different case.
>
> As we discussed, your schedule is such that we will not be able to conduct the examination under oath until mid to late January, 1985.
>
> This will confirm that we have agreed to the continuance of the examintion [sic] under oath of your client and, also, that you have agreed that we will have a corresponding increase in the amount of time within which Travelers has to make a decision on the sworn statement in proof of loss which has previously been submitted by your client.
>
> Upon receipt of this letter, please contact the undersigned in order that we can arrange a mutually convenient time to conduct the examination under oath.

Neither the insured nor Travelers attempted to reschedule the examination in the middle or end of January. On January 16, appellant's attorney drafted a summons and complaint, but did not serve them on Travelers until February 7, 1985. Travelers served an answer claiming that the insured's suit was barred because he had refused to comply with the policy provision requiring him to submit to an oral examination under oath. Apparently in response to this answer, counsel for the insured sent Travelers' counsel a letter on March 25, 1985, stating that the insured was available for an examination under oath.

Travelers made no further attempt to schedule an examination of the insured.

Apparently, an exchange of interrogatories ensued, followed by a long delay of over a year when plaintiff did not pursue his suit. When he attempted to do so, Travelers moved for summary judgment, relying on the policy provision requiring the insured to submit to an examination under oath and the provision which states:

> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy have been complied with, and unless commenced within two years after inception of the loss.

Minn.Stat. § 65A.01, subd. 3 (1986). Travelers argued that, because the insured refused to submit to an examination, he breached a condition precedent to bringing suit on the policy and, therefore, forfeited the benefits under the policy. Both the trial court and court of appeals accepted this argument, holding that Travelers was entitled to summary judgment.

■ At the outset, we note that there is nothing in the policy provisions relied upon by Travelers that bars suit or requires an oral examination prior to suit. The policy merely states that no suit shall be "sustainable" unless all the policy requirements have been complied with. Minn.Stat. § 65A.01, subd. 3 (1986).[2] Under this policy, an oral examination under oath is not a condition precedent to suit. Rather, we hold that the examination requirement is a condition to recovery under the policy. Thus, the fact that an insured brings suit before submitting to an examination by the insurer does not, in itself, constitute a breach and work a forfeiture of benefits under the policy.

In reaching this conclusion, we are guided by the decisions of courts in other jurisdictions which have addressed examination requirements found in fire insurance poli-

(Minnesota Standard Fire Insurance Policy), states:

> The insured, as often as may be reasonably required, shall * * *, within a reasonable period after demand by this company, submit to examinations under oath by any person named by this company, and subscribe the oath.

This examination requirement was only recently added to the standard fire insurance policy in 1983. 1983 Minn.Laws ch. 208, § 1.

**2.** This provision should be contrasted with the provision that voids the policy if the insured fraudulently conceals or misrepresents facts during the insurer's investigation. Travelers expressly stated that it was not relying on this voidance provision.

cies similar to the one involved in this case. In *Pogo Holding Corp. v. New York Property Ins. Co.*, 73 A.D.2d 605, 422 N.Y.S.2d 123 (A.D.1979), the court held that, although the insured corporation brought suit prior to its president submitting to an examination, the insurer was not entitled to summary judgment if the insured's president would submit to an examination within 30 days of the court's order. Likewise, in *Mortgagee Affiliates Corp. v. Commercial Union Ins. Co. of New York*, 27 A.D. 2d 119, 276 N.Y.S.2d 404 (A.D.1967), the court refused to dismiss an action by an insured who failed to submit to an examination before bringing suit. The court ordered the insured to submit to an examination within 20 days, noting that his action was not "sustainable" unless the examination requirement was met. *Id.* at 27 A.D. 2d 122, 276 N.Y.S.2d 406. *See also Lentini Bros. Moving & Storage Co., Inc. v. New York Property Ins. Underwriting Ass'n*, 76 A.D.2d 759, 428 N.Y.S.2d 684 (A.D.1980), *aff'd*, 53 N.Y.2d 835, 440 N.Y.S. 2d 174, 422 N.E.2d 819 (1981) (compliance with policy provisions is condition precedent to recovery of policy benefits). These cases demonstrate that the examination is not a condition precedent to suit such that initiating a suit prior to the examination, in itself, works a forfeiture of benefits.

■ Travelers, nevertheless, cites several cases where the insurer was entitled to summary judgment based on the insured's failure to submit to an examination. *See, e.g., Lentini, supra* (insured failed to appear at a scheduled examination and did not seek an adjournment); *Boston Ins. Co. v. Mars*, 246 Miss. 36, 148 So.2d 718 (1963) (insured expressly refused to submit to an examination); and *Azeem v. Colonial Assurance Co.*, 96 A.D.2d 123, 468 N.Y.S.2d 248 (A.D.1983), *aff'd*, 62 N.Y.2d 951, 479 N.Y.S.2d 216, 468 N.E.2d 54 (1984) (insured demonstrated a pattern of non-cooperation by adjourning several scheduled examinations without proffering a reasonable excuse). In those cases, however, the insured clearly exhibited an unwillingness to submit to an examination whether by express

refusal or through a pattern of non-cooperation. Here, the undisputed portion of the record reflects no similar circumstances entitling Travelers to summary judgment.

In this case, there is no evidence in the record that the insured has, at any time, refused to be examined under oath. The insured was examined once by an agent of Travelers shortly after the fire, though not under oath, and testified at the Huseth trial under oath.[3] Furthermore, the insured expressly stated that he was available for examination shortly after commencing suit. In addition, the single postponement of a scheduled examination due to unavailability of counsel did not constitute non-cooperation. *Cf. Azeem, supra; Bulzomi v. New York Central Mut. Fire Ins. Co.*, 92 A.D.2d 878, 459 N.Y.S.2d 861 (A.D.1983). It is true that, when Travelers agreed to a postponement of the examination until sometime after mid-January 1985, counsel could have contacted Travelers' attorney to reschedule the examination prior to initiating suit in February. It is also true, however, that Travelers could have, at any time, contacted the insured's counsel after January 15 and insisted on a reply as to when counsel would be available for the examination. The normal cooperation expected of opposing professional counsel was simply not exhibited by either side in this case.

In short, we are of the opinion that a failure to submit to examination is not fatal to the insured's suit where, as here, the insured has not expressly refused to submit to an examination and has expressed a willingness to be examined shortly after commencing suit.

We reverse and remand this case to the trial court with instructions that it determine and then mandate what further discovery may be required before a trial date is set.

---

**3.** Travelers' counsel admitted at oral argument that he was present during most, if not all, of the insured's testimony.