411 S.E.2d 27 (1991)
Edward THOMPSON, Plaintiff Below, Appellant,
v.
WEST VIRGINIA ESSENTIAL PROPERTY INSURANCE ASSOCIATION, an unauthorized insurance association (aka "The West Virginia Fair Plan") Defendant Below, Appellee.
No. 20200.
Supreme Court of Appeals of West Virginia.
Submitted September 17, 1991.
Decided November 4, 1991.
*29 Paul A. Ryker, Huntington, for appellant.
Stephen B. Farmer, J. Rudy Martin, Jackson & Kelly, Charleston, for appellee.
*28 MILLER, Chief Justice:
Edward Thompson appeals a final order of the Circuit Court of Cabell County, dated December 13, 1990, dismissing his suit against his casualty insurer, the West Virginia Essential Property Insurance Association (Association).[1] We must decide whether the provision in a fire insurance policy requiring the insured to submit to an oral examination under oath is a condition precedent to filing suit for the insurance proceeds. In answering this question, we also consider the effect of the Unfair Trade Practices Act, W.Va.Code, 33-11-1, et seq.

I.
The facts are substantially undisputed. The insured, Edward Thompson, owned a home on Adams Avenue in Huntington, West Virginia. He had the home insured with the Association for $50,000. The insurance contract contained a provision that required the insured to submit to an oral examination under oath at the request of the insurer.[2]
On October 3, 1989, a fire destroyed the dwelling. When the insured met with an adjuster for the Association a few days later, he was advised by the adjuster that he was a "prime suspect" in the fire loss. He also claims that the adjuster asked him to sign an authorization form giving the insurer access to his financial records. When the insured stated that he was reluctant to sign the form before consulting with a lawyer, the adjuster allegedly replied: "You might as well sign it. If you don't, we will drag this thing out for two years." Mr. Thompson states he then signed the form.[3]
By October 15, 1989, the insured completed the proof of loss form supplied by the Association and mailed it to his agent. On November 8, 1989, the Association wrote the insured to advise that it had received his proof of loss form, but was reserving its rights and defenses under the policy pending a further investigation. By this time, the insured had retained an attorney, who wrote the insurer several letters regarding the fire loss.
On November 3, 1989, the insured's attorney wrote the Association to advise that the insured would file suit if no further action was taken to pay his claim by November 14, 1989. In a letter dated November 20, 1989, the Association's attorney advised the insured's attorney that the Association wanted to exercise its right under the policy to examine the insured under oath at the earliest convenient date. When he did not hear from the insured, the Association's attorney sent a formal demand letter scheduling the sworn examination under oath for 10:00 a.m. on December 14, 1989, at the courthouse in Cabell County. The date of the examination was then postponed by agreement of the attorneys. Finally, in a letter dated January 3, 1990, the Association's attorney asked the insured's attorney to confirm a telephone message that the insured was refusing to be examined under oath.
*30 On January 12, 1990, the insured filed suit against the Association. The complaint stated that the insured had given proper notice and proof of loss and was, therefore, entitled to the insurance proceeds. Moreover, the complaint asserted that the Association had violated the Unfair Trade Practices Act (the Act) by failing to timely acknowledge the insured's proof of loss, and that it had acted in bad faith by denying payment under the policy. The Association responded by filing a motion to dismiss or, in the alternative, for summary judgment, which asserted that because the insured had refused to appear for an examination under oath as required by the policy, the contract was void. The trial court agreed and granted the Association's motion for summary judgment in a final order dated December 13, 1990.

II.
Several preliminary observations are in order. First, the Association did not deny coverage before the insured filed suit. Second, where an insurance policy requires the filing of a proof of loss, suit may not be brought for the policy proceeds until the proof of loss has been submitted. This principle is stated in Syllabus Point 1 of Maynard v. National Fire Insurance Co., 147 W.Va. 539, 129 S.E.2d 443 (1963):
"The furnishing of a preliminary proof of loss as required by the conditions of a fire insurance policy is a condition precedent to any right of action by the insured thereon and, unless proof of loss is waived, an action on the policy does not accrue to the insured until after such proof of loss has been furnished."
Maynard does make it clear that once the proof of loss has been filed by the insured and the insurer has denied coverage, the insured may file suit to recover under the fire insurance policy.
Third, "[u]nder the provisions of the standard fire policy adopted under W.Va. Code, 33-17-2 (1957), the twelve-month time period for bringing suit commences to run when the insurance company notifies the insured in writing that it declines to pay the loss." Syllabus, Meadows v. Employers' Fire Ins. Co., 171 W.Va. 337, 298 S.E.2d 874 (1982). This twelve-month time frame is provided for in the present policy.
Fourth, under the authority of W.Va.Code, 33-2-10,[4] the insurance commissioner has adopted regulations that outline procedures for the processing, denial, or acceptance of first party claims.[5] Under W.Va.Code, 33-11-4(9)(e) (1985), an insurer violates the Act by "[f]ailing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed[.]" Thus, once proof of loss has been filed and the insurer has either denied coverage or failed to affirm or deny coverage within a reasonable time after the proof of loss has been filed, an insured may bring an action to recover on the fire insurance policy.
Finally, the provision permitting the insurer to obtain an oral examination of the insured under oath is found in the standard fire policy, which is authorized in W.Va. Code, 33-17-2.[6] Prior to the enactment of *31 the present fire and marine insurance statute, the standard fire policy language was recited verbatim in W.Va.Code, 33-4-7 (1931). The language permitting an oral examination of the insured is identical to the policy language in this case:[7]
"The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof, if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made."
The purpose of an oral examination under oath is to enable the insurer to obtain necessary and relevant information from the insured about the circumstances surrounding the fire loss and the value of the property destroyed. It also enables the insurer to determine rationally whether the insured is submitting a false or fraudulent claim.
When this language was placed in the standard fire policy, the insurer was unable to obtain any discovery before or after a lawsuit was filed.[8] This limitation substantially handicapped the insurer's defense against false or fraudulent fire loss suits. Today, much of this handicap has been removed because after suit is filed the insured's deposition can be taken, and he can be required to furnish relevant documents at that time. See W.Va.R.Civ.P. 30(b)(1).

III.
With these considerations in mind, we address the contentions of the parties. The insured contends that the Association violated the Act by "[f]ailing to affirm or deny coverage of [his claim] within a reasonable time after proof of loss statements have been completed[.]" W.Va.Code, 33-11-4(9)(e) (1985).[9] As soon as the Association engaged in an unfair claims practice, the insured contends that he was then relieved of all contractual obligations under the policy.[10] The Association counters that the insured's refusal to submit to the requested *32 examination under oath is dispositive of the entire case. This latter argument was adopted by the trial court, so we address it first.

A.
The Association argues that the right to require an examination under oath is a legitimate, material provision of the contract and refusal to comply before filing suit invalidates the policy.[11] It relies heavily on Stover v. Aetna Casualty & Surety Co., 658 F.Supp. 156 (S.D.W.Va.1987). Stover appears to misconstrue when an insured has a right to bring an action on a fire policy. There, the insured's truck and a number of his tools were destroyed by fire. After the insured submitted his proof of loss, the insurance company requested his examination under oath, as provided for in the policy. During the deposition, the insured gave vague answers about prior insurance, the name of his insurance agent, and his self-employment income. Following the examination, he refused to furnish certain documents requested by the insurer. Shortly thereafter, the insured filed suit. The district court granted summary judgment for the insurance company. It concluded that when the insured failed to answer material questions during the examination under oath, he breached the insurance contract and was, therefore, precluded from filing suit.
Stover suggests that so long as the insurer is investigating the loss or has not repudiated the policy, a suit cannot be brought:
"It must be kept in mind that the Defendant had not repudiated the policies at the time this action was initiated. At no time did the Defendant refuse or deny coverage. Its investigation was continuing.... In this vein, it has been held that an insured cannot `insulate itself against cooperation by commencing an action before there has in fact been repudiation of liability by the insurer....'" 658 F.Supp. at 161. (Citation omitted).
Contrary to Stover and under Maynard, supra, our law does not require a repudiation of coverage before a suit may be filed on a fire policy.[12]
Some jurisdictions hold that where the insured refuses to comply with a demand for an examination under oath, he breaches the policy and forecloses his right to recover under the policy.[13]See, e.g., Warrilow v. Superior Court, 142 Ariz. 250, 689 P.2d 193 (App.1984); Robinson v. National Auto. & Casualty Ins. Co., 132 Cal.App.2d 709, 282 P.2d 930 (1955); Halcome v. Cincinnati Ins. Co., 254 Ga. 742, 334 S.E.2d 155 (1985); Standard Mut. Ins. Co. v. Boyd, 452 N.E.2d 1074 (Ind.App.1983); Watson v. National Sur. Corp., 468 N.W.2d 448 (Iowa 1991); Allison v. State Farm Fire & Casualty Co., 543 So.2d 661 (Miss.1989); Baker v. Independent Fire Ins. Co., 103 N.C.App. 521, 405 S.E.2d 778 (1991).
Other courts have adopted a more flexible approach to this question. For example, in C-Suzanne Beauty Salon, Ltd. v. General Insurance Co., 574 F.2d 106, 111 *33 (2d Cir.1978), the federal court of appeals refused to dismiss the insured's suit because of his initial unwillingness to undergo an oral examination: "By conditioning the renewal of the motion to dismiss upon a showing of prejudice, the district judge was acting in accordance with the principle that technical or unimportant defects will not justify a forfeiture."
In a related vein, the Missouri Court of Appeals found in Farm Bureau Town & Country Insurance Co. v. Crain, 731 S.W.2d 866 (Mo.App.1987), that the insured's failure to answer material questions at the examination under oath did not void the policy. This was because after the suit was filed, the insured gave a deposition where the same questions were asked and answered. The court concluded that it was a factual question whether the insured's initial refusal to answer questions during the examination under oath was "repaired" by the subsequent deposition.
In Pogo Holding Corp. v. New York Property Insurance Underwriting Association, 73 A.D.2d 605, 422 N.Y.S.2d 123 (1979), the insurer asked the president of the insured company to submit to an oral examination. Before the president was examined, the insured sued the insurer for the amount of the fire loss. The court held that the insurer was not entitled to summary judgment because of the president's failure to submit to the examination. However, the court required the president to submit to the examination within thirty days from the date of the court's order.
In McCullough v. Travelers Companies, 424 N.W.2d 542 (Minn.1988), the Minnesota Supreme Court was confronted with a situation almost identical to the present one. In McCullough, as here, the insurer requested the insured to submit to an oral examination. The examination was later postponed by agreement of counsel. The insured then filed suit.
The court began by noting that "there is nothing in the policy provisions ... that bars suit or requires an oral examination prior to suit. The policy merely states that no suit shall be `sustainable' unless all the policy requirements have been complied with."[14] 424 N.W.2d at 544. (Citation omitted; footnote omitted). Furthermore, the court refused to construe this policy language to mean that an oral examination was a condition precedent to the insured's right to bring the suit:
"Under this policy, an oral examination under oath is not a condition precedent to suit. Rather, we hold that the examination requirement is a condition to recovery under the policy. Thus, the fact that an insured brings suit before submitting to an examination by the insurer does not, in itself, constitute a breach and work a forfeiture of benefits under the policy." 424 N.W.2d at 544.
We agree with the Minnesota Supreme Court that the provision in an insurance policy requiring the insured to submit to an examination under oath is not a condition precedent to filing a suit for the policy proceeds. However, an insured's refusal to comply with such a request may affect his right to recover under the policy.
In determining whether an insured's refusal to submit to an oral examination should result in denying the insured coverage, some consideration must be given to whether the insurer has violated the Act. Of particular importance is whether the insurer has complied with W.Va.Code, 33-11-4(9)(e), and affirmed or denied coverage within a reasonable time after the proof of loss has been filed.[15]
We do not agree with the insured's position that once a violation of the Act occurs, he is completely relieved of any *34 contractual obligation under the policy. However, we believe that cooperation is a two-way street. If the insurer has substantially violated the Act or its regulations, the company's action will be considered in assessing whether the insured's lack of cooperation was justified. Moreover, where the insured has filed suit for the proceeds under an insurance policy shortly after the insurer has demanded his oral examination under oath, the insurer's ability to secure information through discovery should be considered in determining whether the insurer has suffered any substantial prejudice by the delay.
Here, the proof of loss form was filed promptly after the fire loss. Moreover, the insurer's adjuster met with the insured within days of the fire loss. At this meeting, the insured signed a release giving the insurer authority to obtain copies of his financial records. By a letter dated November 20, 1989, the insured's attorney was informed of the insurer's desire to examine his client. The date for the examination was subsequently continued by agreement of counsel. The suit was filed on January 12, 1990. The insurer had the right to take the insured's deposition any time after this date.
The insurer has neither affirmed nor denied coverage or complied with the notification procedure contained in W.Va. C.S.R. § 114-14-6.5. See note 9, supra. Of significant importance are affidavits the insured filed with his motion in opposition to summary judgment. One of the affidavits was from a police officer who had investigated the fire loss on behalf of the Huntington police department, and another was from the city's fire chief. Both affiants stated that their investigations of the fire loss had not revealed any facts that would indicate that the insured intentionally set or caused the fire to be set. There were no countervailing affidavits offered by the insurer. We fail to see how the insurer has suffered any substantial prejudice. We, therefore, conclude that the trial court erred in granting the insurer's motion for summary judgment.

B.
We spoke to an insured's cause of action based on the violation of the Act in Jenkins v. J.C. Penney Casualty Insurance Co., 167 W.Va. 597, 280 S.E.2d 252 (1981). In Jenkins, we held that a private cause of action could arise from violations of the Act. However, in Syllabus Point 2 of Jenkins, we also recognized that such a suit could not be brought until the underlying suit was resolved:
"An implied private cause of action may exist for a violation by an insurance company of the unfair settlement practice provisions of W.Va.Code, 33-11-4(9); but such implied private cause of action cannot be maintained until the underlying suit is resolved."
Jenkins involved a claim by a third party against the carrier. The plaintiff was injured when the insured struck her vehicle. She claimed that the insured's carrier breached W.Va.Code, 33-11-4(9)(f), by not attempting a prompt and equitable settlement where liability had become reasonably clear. We held that until the underlying negligence of the carrier's insured was established, it would be premature for the third party to bring the unfair trade practice claim:[16]
"To permit a direct action against the insurance company before the underlying claim is ultimately resolved may result in duplicitous litigation since the issue [sic] of liability and damages as they relate to the statutory settlement duty are still unresolved in the underlying claim. Once the underlying claim has been resolved, the issues of liability and damages have become settled and it is possible to view the statutory claim in light of the final result of the underlying action. A further policy reason to delay the *35 bringing of the statutory claim is that once the underlying claim is resolved, the claimant may be sufficiently satisfied with the result so that there will be no desire to pursue the statutory claim." 167 W.Va. at 608, 280 S.E.2d at 259. (Footnote omitted).
In the present case if the insured successfully recovers on the policy, his damages will follow those prescribed in Syllabus Point 1 of Hayseeds, Inc. v. State Farm Fire & Casualty Co., 177 W.Va. 323, 352 S.E.2d 73 (1986):
"Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and [(3)] damages for aggravation and inconvenience."[17]
These damages may mirror the damages that could be obtained under the Act, and a second suit would be unnecessary. As stated in note 12 of Jenkins:
"We do not attempt to delineate the entire damage issue on a statutory claim but it obviously does not serve to replicate the damages obtained in the underlying claim. Certainly, increased costs and expenses including the increase in attorney's fees resulting from the failure to offer a prompt fair settlement could be recovered. In an appropriate case, punitive damages may be recovered." 167 W.Va. at 609, 280 S.E.2d at 259.
In this case, we deal with a first party claim where the insured is proceeding against his own insurance carrier; however, the same logic applies. The underlying claim involves the payment of the fire loss. The insurer initially delayed determining whether to pay the loss, intimating that the fire may not have been of an accidental origin. Later the Association invoked the policy provision regarding an oral examination under oath. Shortly before filing the suit, the insured's attorney informed the insurer's counsel that he would not permit the insured to be examined under oath. After the suit was filed, it appears that there was neither further dialogue on this subject nor any attempt on the part of the insurer to take the insured's deposition. Although the insured has filed suit, we do not yet know whether he is entitled to the insurance proceeds. For these reasons, we find the claim based on the Act premature.
Accordingly, the judgment of the Circuit Court of Cabell County is reversed, in part, and affirmed, in part, and the case is remanded for further proceedings consistent with this opinion.
Reversed in part, Affirmed in part, and Remanded.
NOTES
[1] The Association was created pursuant to W.Va.Code, 33-20A-1, et seq. This statute is designed "[t]o provide for a mechanism whereby the [insurance] commissioner may establish insurance plans to make available insurance coverage to persons who do not have coverages available to them in the voluntary insurance market." W.Va.Code, 33-20A-2.
[2] The policy provision stated:

"The insured, as often as may be reasonably required, shall exhibit to any person designated by the Company, all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of accounts, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made."
[3] These allegations are found in Mr. Thompson's affidavit filed in opposition to the Association's motion for summary judgment. Because there was no affidavit filed by the insurance adjuster, we assume the allegations are true for purposes of the motion for summary judgment.
[4] W.Va.Code, 33-2-10, is the provision in the Act which authorizes the insurance commissioner to promulgate rules and regulations governing insurance companies:

"The commissioner is authorized to promulgate and adopt such rules and regulations relating to insurance as are necessary to discharge his duties and exercise his powers and to effectuate the provisions of this chapter and to protect and safeguard the interests of policyholders and the public of this State."
[5] Section 114-14-2.3 of the West Virginia Code of State Regulations (W.Va.C.S.R.) defines a "First Party Claimant or Insured" as "an individual, corporation, association, partnership or other legal entity asserting a right to payment under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such policy or contract."
[6] W.Va.Code, 33-17-2, provides, in relevant part:

"No policy of fire insurance covering property located in West Virginia shall be made, issued or delivered unless it conforms as to all provisions and the sequence thereof with the basic policy commonly known as the New York standard fire policy, edition of one thousand nine hundred forty-three, which is designated as the West Virginia standard fire policy[.]"
[7] For the policy language, see note 2, supra.
[8] This information is outlined in some detail in M. Lugar & L. Silverstein, West Virginia Rules of Civil Procedure 214 (1960): "Except for the provisions of Rule 27, which pertains to depositions taken before the commencement of the action or pending an appeal, the procedure permitted under Rules 26 through 37 is almost entirely new in West Virginia." The West Virginia Rules of Civil Procedure were adopted effective July 1, 1960. They were modeled after the Federal Rules of Civil Procedure, which were adopted in 1937. The discovery and deposition rights provided for in the federal rules gave states the impetus to adopt similar rules.
[9] W.Va.C.S.R. § 114-14-6.5, provides:

"Notice of necessary delay in investigating claims.If the insurer needs more time to determine whether a first party claim should be accepted or denied, it shall so notify the first party claimant in writing within fifteen (15) working days after receipt of the proofs of loss. If the investigation remains incomplete, the insurer shall send to such claimant within thirty (30) calendar days from the date of the initial notification and every thirty (30) calendar days thereafter, a letter setting forth the reason additional time is needed for investigation. Where there is a reasonable basis supported by specific information available for review by the Commissioner that such claimant has fraudulently caused or contributed to the loss by arson, the insurer is relieved from the requirements of this subsection: Provided, however, That the claimant shall be notified of the acceptance or denial of the claim within a reasonable time for full investigation after receipt by the insurer of a properly executed proof of loss." (Emphasis in original).
[10] On appeal, the insured also argues that the Association violated other provisions of W.Va. Code, 33-11-4(9):

"(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
* * * * * *
"(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;
* * * * * *
"(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear[.]"
[11] The Association argues that the following provision in Mr. Thompson's policy precluded him from filing suit:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."
[12] Accord Lawton v. Great Southwest Fire Ins. Co., 118 N.H. 607, 392 A.2d 576 (1978); Anderson v. Continental Ins. Co., 85 Wis.2d 675, 271 N.W.2d 368 (1978).
[13] Courts have held that the insured does have the right to have an attorney present at the sworn examination. Gordon v. St. Paul Fire & Marine Ins. Co., 197 Mich. 226, 163 N.W. 956 (1917); Gross v. United States Fire Ins. Co., 71 Misc.2d 815, 337 N.Y.S.2d 221 (1972); Shelter Ins. Cos. v. Spence, 656 S.W.2d 36 (Tenn.1983). Cf. Hart v. Mechanics & Traders Ins. Co., 46 F.Supp. 166 (W.D.La.1982) (Insured is entitled to have stenographer of his own choosing at oral examination). Moreover, some courts have found that the failure to answer immaterial questions will not void the policy. George v. Connecticut Fire Ins. Co., 84 Okl. 172, 201 P. 510 (1921); Mulkey v. United States Fidelity & Guar. Co., 243 S.C. 121, 132 S.E.2d 278 (1963), overruled on other grounds, Johnson v. South State Ins. Co., 288 S.C. 239, 341 S.E.2d 793 (1986).
[14] The wording of the policy in McCullough is exactly the same as in the policy provision in this case, except that the statute of limitations in Mr. Thompson's policy was twelve months rather than two years. See note 11, supra. The policy in McCullough provided: "`No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy have been complied with, and unless commenced within two years after inception of the loss.'" 424 N.W.2d at 544.
[15] For the text of the pertinent regulation, see note 9, supra.
[16] Moreover, in Syllabus Point 3 of Jenkins, we held that a single violation of the Act was not sufficient to maintain the cause of action: "More than a single isolated violation of W.Va. Code, 33-11-4(9), must be shown in order to meet the statutory requirement of an indication of `a general business practice,' which requirement must be shown in order to maintain the statutory implied cause of action."
[17] In Syllabus Point 2 of Hayseeds, we outlined when punitive damages may be allowed: "An insurer cannot be held liable for punitive damages by its refusal to pay on an insured's property damage claim unless such refusal is accompanied by a malicious intention to injure or defraud."