Happy Hank Auction Co., Inc., Respondent, *v.* American Eagle Fire Insurance Company et al., Appellants.

First Department, October 25, 1955.

*Herbert P. Polk* of counsel (*Frederic C. Pitcher* and *Robert S. Newman* with him on the brief; *Lowenstein, Pitcher, Amann & Parr,* attorneys), for appellants.

*Gilbert Goldstein* of counsel (*Lawrence Kovalsky* with him on the brief; *Goldstein & Goldstein,* attorneys), for respondent.

BOTEIN, J. Plaintiff is a corporation engaged in the retail furniture business. On December 7, 1953, a fire occurred on its premises which damaged plaintiff's property. Plaintiff was insured with defendant insurance companies in a substantial amount against loss by fire.

Following inability to adjust its claim plaintiff commenced an action upon the policies. In the first cause of action it seeks a direction for an appraisal to determine the amount of the loss. The second cause of action seeks a money judgment in the amount determined on appraisal, or in the alternative, the face amount of the policies. As affirmative defenses defendants assert fraud, false swearing, concealment and noncompliance with the requirements of the policies. Upon proof presently available in support of these defenses defendants moved for summary judgment, which motion has been denied.

Plaintiff submitted a proof of loss to defendants for the alleged damage to merchandise, fixtures and leasehold improvements. A substantial portion of this claim was represented as consisting of merchandise burned " out-of-sight ". On an examination under oath of plaintiff, conducted by defendant companies pursuant to the policy provisions, plaintiff claimed that except for some looseleaf pages covering a period commencing a little less than one year before the date of the fire, all

of its books of account had been lost in the fire. One of the pages so providentially preserved purported to be the current inventory account from plaintiff's general ledger. This page contained one lone entry, showing a merchandise inventory figure as of January 1, 1953 — eleven months before the fire occurred. Therefore, the accuracy of the inventory figures claimed as of the date of the fire, December 7, 1953, obviously hinged on the integrity of the January 1, 1953 inventory figure.

This figure was a balance purportedly copied from the closing entry on the inventory account page for the year 1952, one of the records which plaintiff claimed had been destroyed in the fire. Plaintiff's Federal income tax and State franchise tax returns for 1952 would contain a closing inventory figure which should have been identical with the closing entry on the missing inventory account page. There were also other sizeable portions of plaintiff's claim that lacked impressive substantiation because their bookkeeping credentials had been lost in the fire; but which could be reconstructed from the tax returns. Since presumably not a vestige of the out-of-sight merchandise survived the fire, the inventory figures assumed especial significance in establishing that aspect of plaintiff's claim. After first refusing to furnish copies of its tax returns, then agreeing, and then equivocating, plaintiff finally maintained at the closing session of the original examination that the copies had not yet been received. More to the point here, at the conclusion of this examination plaintiff had also not responded to certain questions and demands touching upon its claims for the merchandise burned out-of-sight, but had promised to obtain and submit such information to defendants.

Several months after the minutes of the examination had been signed plaintiff demanded an opportunity " to answer all questions and to produce all records and papers in its possession or under its control " which defendants maintained had not been answered or produced. Defendants acceded to this demand.

At the opening of the re-examination plaintiff, through its counsel, announced that it was amending its proof of loss by withdrawing therefrom its claim for the merchandise allegedly burned out-of-sight. Plaintiff then refused to answer any questions or produce any bills relating to the claimed out-of-sight loss or to produce the copies of its tax returns. The basis of these refusals was that by amending its proof of loss so as to withdraw its out-of-sight claim plaintiff had rendered defendants' questions and demands immaterial. Defendants

charge plaintiff with concealments and noncompliance which under the terms of the policies render them void and warrant dismissal of the claim.

In denying defendants' motion for summary judgment Special Term sustained plaintiff's contention that it had the right to amend its proof of loss and thereby withdraw part of its claim, and that such amendment rendered the questions and demands relating to the withdrawn portion immaterial.

An insured undeniably has the right to amend or withdraw part of his proof of loss (*McMaster* v. *President & Directors of Ins. Co. of North America,* 55 N. Y. 222; *Hirsch* v. *New York Life Ins. Co.,* 267 App. Div. 404, 407); but by so doing he does not foreclose the insurance company from attempting to prove that the withdrawn part of the original claim was false or fraudulent. The standard fire insurance policies involved here all provide that they are voided by material misrepresentations made before or after a loss. " The contract of insurance being entire and indivisible, a cause of avoidance or forfeiture in respect to a part of the property insured affects the whole contract." (*Fitzgerald* v. *Atlanta Home Ins. Co.,* 61 App. Div. 350, 356.) This follows without regard to whether or not the insurance company has actually been deceived or injured by the false swearing (*Domagalski* v. *Springfield Fire & Marine Ins. Co.,* 218 App. Div. 187, 189–190). In *Werber Leather Coat Co.* v. *Niagara Fire Ins. Co.,* (254 App. Div. 298) it was specifically held that fraudulent inflation of the out-of-sight portion of the insured's claim voided the entire policy and precluded recovery. (See also *Claflin* v. *Commonwealth Ins. Co.,* 110 U. S. 81; *Wicklow* v. *United States Fidelity & Guar. Co.,* 220 App. Div. 199, and *Corn Novelty Co.,* v. *Norwich Union Fire Ins. Soc.,* 176 App. Div. 261.)

If defendants could prove that the original out-of-sight claim, although withdrawn, was fraudulent, they could defeat plaintiff's claim in its entirety. The statutory purpose is clear in the policy provision that the " entire policy shall be void if, \* \* \* the insured has wilfully concealed or misrepresented \* \* \* or in case of any fraud or false swearing " (Policy lines 1–6; Insurance Law, § 168, subd. 6). Certainly the Legislature never intended that a policyholder could file a swollen claim and thereafter adroitly preserve his legitimate claim by casting off the fraudulent portion if the insurance company came upon the spoor of the fraud. On that basis there would be little risk and no penalty.

Therefore, questions and documents legitimately tending to resolve the *bona fides* of the out-of-sight claim were material. Each of the standard form policies provides in sweeping terms that plaintiff must submit to examinations under oath and produce certain indicated records and documents (Policy lines, 113–122; Insurance Law, § 168, subd. 6). '' The object of the provisions in the policies of insurance, requiring the assured to submit himself to an examination under oath, to be reduced to writing, was to enable the company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims. And every interrogatory that was relevant and pertinent in such an examination was material, in the sense that a true answer to it was of the substance of the obligation of the assured.'' (*Claflin* v. *Commonwealth Ins. Co.*, 110 U. S. 81, 94–95, *supra.*)

Defendants have no license to harass plaintiff with aimless questions and demands for documents, or with random shots in the dark. But where, as here, there were circumstances tending to excite suspicion, and there was some basis for probing the *bona fides* of the claim, and where the questions asked and the documents sought had point and direction, they must be held to be material. In *Gipps Brewing Corp.* v. *Central Mfrs'. Mut. Ins. Co.*, (147 F. 2d 6), where the facts were quite similar to those presented here, the court said (p. 12) '' That the questions were proper and material, we think there can be no doubt ''.

Furthermore, the merchandise burned out-of-sight was covered by the policies. Whether or not a claim was ultimately made for the loss of such merchandise, the policies required plaintiff '' to furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed '' (Policy lines, 94–97; Insurance Law, § 168, subd. 6). Thus the policies themselves made material an inquiry into all the property covered by insurance, including property for which no claim was made (*Gipps Brewing Corp.* v. *Central Mfrs.' Mut. Ins. Co.*, *supra*, p. 10).

The standard policies provide that '' [N]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with (Policy lines, 157–161; Insurance Law, § 168, subd. 6). The policy provisions applicable here should be construed liberally in favor of the assured

(*McNally* v. *Phœnix. Ins. Co.*, 137 N. Y. 389). This harsh penalty of nullification of the policies should not be invoked for technical or unimportant omissions in performance or where an insured has complied substantially with the terms of the policy (*Porter* v. *Traders' Ins. Co.*, 164 N. Y. 504). And if there is any question of fact that survives a study of the motion papers as to whether plaintiff willfully refused to answer material questions or produce material documents, that question should be reserved for the trial court (*Sebring* v. *Fidelity-Phenix Fire Ins. Co.*, 255 N. Y. 382).

However, it is clear that plaintiff has willfully and designedly refused to answer questions and produce documents that are indisputably material to its claim. There has been a fully informed refusal to comply substantially with the terms of the policies. Time and again counsel for the companies advised plaintiff's president and its counsel, in most explicit language, that he regarded the questions asked and the documents sought as material, that the insured had a duty to comply and that the consequences of noncompliance would be vitiation of the policies. The repeated refusals of plaintiff to comply are such as to render the policies void and this action not sustainable.

This court has previously had occasion to say: " We think a further ground requiring dismissal of the complaint was plaintiff's willful refusal to answer relevant questions on his examination by defendants. That refusal was a breach of one of the substantial conditions of the policies " (*Hallas* v. *North Riv. Ins. Co. of N. Y.*, 279 App. Div. 15, 16, affd. 304 N. Y. 671, 672).

There is no need to discuss extensively the other points raised by defendants. Plaintiff argues that it had basis for maintaining that its tax returns were not " vouchers " within the meaning attaching to that word in the policy context, and that it therefore was not required to produce them (see, however, *Paramount Pictures* v. *Brandt,* 276 App. Div. 1002). But plaintiff refused, pointblank, to state whether the closing inventory figure reported on the 1952 tax return coincided with the closing 1952 figure shown on the current inventory account — an answer that did not require production of the tax return. In view of the destruction of all records that could support this figure, some corroboration was highly important in fixing the extent of the damage to the in-sight as well as the out-of-sight merchandise. It appears to us that under the special circumstances surrounding the presentation of this claim, the plaintiff should have answered the question.

The first cause of action, which prays for a direction requiring the companies to determine the amount of the loss by appraisal, pursuant to the policy provisions, must be dismissed on the authority of *Matter of Delmar Box Co. (Ætna Ins. Co.)*, (309 N. Y. 60).

The order appealed from should be reversed, and defendants' motion for summary judgment dismissing both causes of action in the complaint should be granted.

Breitel, J. P., Bastow, Rabin and Cox, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to the appellants and the motion for summary judgment granted, and judgment is directed to be entered in favor of the defendants dismissing both causes of action, against each of the defendants, alleged in the complaint, with costs.