THOMSON v STATE FARM INSURANCE COMPANY

Docket No. 200066. Submitted March 11, 1998, at Grand Rapids. Decided
October 2, 1998, at 9:20 A.M.

William and Susan Thomson brought an action in the Kent Circuit
Court against State Farm Insurance Company, seeking to recover
under a homeowner's insurance policy the value of goods allegedly
stolen from a commercial storage facility. State Farm moved for
summary disposition on the ground that the Thomsons' failure to
submit to examinations under oath (EUOS) required by the policy
resulted in a material policy breach and barred the plaintiffs from
bringing the action. The court, Robert A. Benson, J., denied the
motion. The Court of Appeals soon thereafter decided a case
involving a policy that contained the same EUO requirement as the
Thomsons' policy, *Yeo v State Farm Ins Co*, 219 Mich App 254
(1996). Thereafter, State Farm moved for reconsideration of the
denial of its motion, and the Thomsons' counsel advised State
Farm that they were willing to appear for an EUO. The court then
ordered the Thomsons to submit to an EUO within fourteen days
from November 21, 1996, and denied State Farm's motion for
reconsideration. The Court of Appeals granted State Farm leave to
appeal.

The Court of Appeals *held*:

1. *Yeo* made clear that the policy provisions in question necessa-
rily allow State Farm to require an insured to appear for at least
one EUO and, if the insured fails or refuses to submit to an EUO, the
insured is precluded from maintaining an action on the policy.
Therefore, under *Yeo*, the plaintiffs' action must be dismissed.

2. *Yeo* left open the question whether dismissal should be with or
without prejudice. However, *Yeo*'s general framework indicates that
if the noncompliance is wilful, the dismissal is to be with prejudice,
and if the noncompliance is not wilful, the dismissal is to be with-
out prejudice.

3. Wilful noncompliance involves something more than merely
knowingly failing to appear for an EUO. Wilful noncompliance refers
to a failure or refusal to submit to an EUO or otherwise cooperate
with an insurer in regard to contractual provisions allowing an

insurer to investigate a claim that is part of a deliberate effort to withhold material information or a pattern of noncooperation with the insurer.

4. The Thomsons provided recorded statements to State Farm. This is a minimal showing that they were not deliberately intending to withhold material information from State Farm. In future cases, it will not be sufficient to volunteer, or even to participate in giving, unsworn statements to the insurer. Henceforth, the burden is on the insured to demonstrate that the insured has not deliberately withheld material information, as opposed to a knowing failure to submit to an EUO.

5. Standing alone, the Thomsons' ignoring or rebuffing of State Farm's repeated efforts to arrange the EUOs would support a finding that there was a pattern of noncooperation with the insurer. However, the Thomsons' actions and nonactions were taken before the *Yeo* decision, when the extent of the obligation of an insured under the relevant policy provisions was perhaps questionable. Henceforth, the burden is on the insured to demonstrate that the insured has not engaged in a pattern of noncooperation.

6. The order of the trial court must be reversed and the matter must be remanded to the trial court for entry of an order dismissing this case without prejudice.

Reversed and remanded.

GRIFFIN, P.J., dissenting, stated that the plaintiffs' noncompliance was wilful and, therefore, that the trial court's order should be reversed and the matter should be remanded for the entry of an order dismissing the case with prejudice. *Yeo* did not change our insurance law with regard to the EUO provision at issue. *Yeo* reaffirmed the existing law that the provision is valid and a condition precedent to maintaining an action. The plaintiffs' noncompliance was committed intentionally, knowingly, purposely, and without justifiable excuse and should be viewed as wilful, therefore mandating dismissal with prejudice.

INSURANCE — ACTIONS — CONDITIONS PRECEDENT — EXAMINATIONS UNDER OATH — DISMISSAL WITHOUT PREJUDICE — DISMISSAL WITH PREJUDICE — WILFUL NONCOMPLIANCE.

Language in a homeowner's insurance policy that clearly establishes that, when requested by the insurer, an examination of the insured under oath is a condition precedent that must be satisfied before the insured has a right to bring an action against the insurer is generally valid and enforceable; an action against an insurer brought by an insured who has failed or refused to submit to an examination under oath requested by the insurer must be dismissed; dismis-

sal must be with prejudice where the noncompliance was wilful and without prejudice where the noncompliance was not wilful; wilful noncompliance is a failure or refusal to submit to an examination under oath or otherwise cooperate with an insurer in regard to contractual provisions allowing an insurer to investigate a claim that is part of a deliberate effort to withhold material information or a pattern of noncompliance with the insurer; the burden is on the insured to demonstrate that the insured has not deliberately withheld material information, as opposed to a knowing failure to submit to an examination under oath, or engaged in a pattern of noncooperation.

*Garlington & Associates* (by *Monica E. Garlington*), for the plaintiffs.

*Beusse Holmes, P.C.* (by *Elizabeth S. Holmes*), for the defendant.

Before: GRIFFIN, P.J., and HOEKSTRA and WHITBECK, JJ.

WHITBECK, J. Defendant State Farm Insurance Company appeals by leave granted the trial court's denial of its motion for summary disposition pursuant to MCR 2.116(C)(10) in this suit brought by plaintiffs William Thomson and Susan Thomson. We reverse and remand for dismissal of this case without prejudice.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

State Farm and the Thomsons were parties to a homeowner's insurance policy. In February 1996, the Thomsons submitted a claim to State Farm seeking coverage for household goods with a value of about $25,000 that were allegedly stolen from a commercial storage facility in Ohio on November 25, 1995, or thereabout. The Thomsons eventually provided recorded statements, as well as other information, to

State Farm.[1] A representative of State Farm conducted a tape-recorded interview of William Thomson at his apartment in Grandville on December 4, 1995, which resulted in a quite lengthy transcript that is included in the record. State Farm acknowledged that it took recorded statements from both of the Thomsons.[2]

The insurance policy issued by State Farm to the Thomsons included the following provisions:

> 2. Your Duties After Loss. After a loss to which this insurance may apply, you shall see that the following duties are performed:
>
> *   *   *
>
> d. as often as we reasonably require:
>
> *   *   *
>
> (3) submit to and subscribe, while not in the presence of any other insured:
> (a) statements; and
> (b) examinations under oath; and
>
> *   *   *
>
> 8. Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage. [Emphases omitted.]

---

[1] Evidently, State Farm referred this case to an internal "Special Investigation Unit" because of the size of the claim and the apparent lack of any sign of forced entry into the storage facility.

[2] State Farm stated in its brief in support of its motion for summary disposition that it "took the recorded statements of the plaintiffs . . . . "

State Farm made multiple requests for the Thomsons to appear for examinations under oath (EUOs).[3] In a letter dated May 14, 1996, the Thomsons' counsel stated that he thought requiring the Thomsons to participate in EUOs would be unreasonable because an adjuster had taken a statement from William Thomson in December 1995, and State Farm had not indicated what areas needed clarification.[4]

State Farm moved for summary disposition in this case on the basis of the Thomsons' failure to submit to EUOs. On September 25, 1996, the trial court issued an order denying State Farm's motion for summary disposition. On October 4, 1996, this Court decided

---

[3] These requests included (1) an April 4, 1996, letter from State Farm's counsel stating that such counsel had attempted to contact the Thomsons' counsel at least six times to schedule EUOs, (2) a May 8, 1996, letter from State Farm's counsel advising that the file would be closed if the Thomsons' counsel did not contact State Farm's counsel within seven days to arrange for the EUOs, (3) following the letter of the Thomsons' counsel of May 14, 1996, a May 17, 1996, letter from State Farm's counsel again requesting EUOs and asking whether the Thomsons still refused to cooperate, (4) a June 14, 1996, letter from State Farm directly to the Thomsons requesting that they contact State Farm to arrange for the EUOs, and (5) the July 22, 1996, denial of claim on the basis of the Thomsons' failure to submit to the EUOs.

[4] The body of this letter read:

I understand your request for an examination under oath; what I do not understand is what purpose it will serve at this point. You have already had the locks tested, and your expert has concluded that they were not picked. Your adjuster has already taken Mr. Thomson's statement which runs for approximately 26 pages. Your adjuster did not apparently believe my client, and I have little cause to believe that any examination under oath will suddenly convince your adjuster as to the veracity of my clients' claims.

I do not believe that it is reasonable for my clients to submit to depositions [sic] unless there is additional information that you need. Some months ago I asked you what areas needed clarification. You never responded. I simply do not believe it is reasonable to have my clients make additional statements at this time.

*Yeo v State Farm Ins Co*, 219 Mich App 254; 555
NW2d 893 (1996), a case that we address at length
below. Thereafter, State Farm moved for reconsideration of the trial court's denial of its motion for summary disposition. In a letter dated October 31, 1996,
counsel for the Thomsons essentially advised counsel
for State Farm that the Thomsons were willing to
appear for an EUO.[5] In a December 6, 1996, order, the
trial court (1) ordered the Thomsons to submit to an
EUO within fourteen days from November 21, 1996,
and (2) denied State Farm's motion for reconsideration of the trial court's denial of its motion for summary disposition. Thereafter, this Court granted State
Farm's application for leave to appeal. There is no
indication from the record that State Farm has ever
conducted an EUO with either of the Thomsons.

## II. STANDARD OF REVIEW

We review the trial court's denial of summary disposition de novo. *Pinckney Community Schools v
Continental Casualty Co*, 213 Mich App 521, 525; 540
NW2d 748 (1995). A trial court may properly grant a
motion for summary disposition under MCR
2.116(C)(10) if, except with regard to the amount of
damages, there is no genuine issue of material fact
and the moving party is entitled to judgment as a mat-

---

[5] The body of the letter stated:

Because of the recent case of *Yeo v State Farm*, we are now willing to allow State Farm to perform an examination under oath or,
in the alternative, taking a Deposition [sic] in the above-referenced
case. Since we are within the one-year provision for the "EUO" I
believe that it would be foolish not to proceed with the present
case, and to get it resolved.

If you have any questions, please do not hesitate to contact me.

ter of law. *Pinckney Community Schools, supra* at 525.

### III. *YEO*

In *Yeo, supra* at 255, the plaintiff alleged that her home, insured by State Farm (which was also the defendant insurer in that case), had been burglarized on July 22, 1994. In a September 27, 1994, letter, State Farm requested an EUO of the plaintiff on October 25, 1994. *Id.* On October 5, 1994, the plaintiff provided State Farm with a detailed, taped statement, but she did not appear for the EUO on October 25, 1994. In a letter dated October 31, 1994, State Farm rescheduled the EUO for November 21, 1994. However, the plaintiff filed the lawsuit in *Yeo* on November 2, 1994. *Id.* The pertinent provisions of the insurance policy in *Yeo* regarding EUOs contained language identical to the pertinent language of the policy in this case. *Id.* at 256-257. State Farm moved for summary disposition on the basis of the failure of the plaintiff in *Yeo* to submit to a requested EUO before filing suit, "arguing that because plaintiff failed to satisfy the condition of being examined under oath, recovery under the policy was barred." *Id.* at 256. The trial court dismissed the case without prejudice and with " 'hope that the parties can proceed with the examination under oath and refile [sic] this case.' " *Id.* State Farm appealed, arguing that the case should have been dismissed with prejudice, but this Court affirmed. *Id.* at 255.

In *Yeo*, this Court made clear that the EUO requirement contained in policies like the one at issue there, and here, is generally enforceable:

In this case, the policy language clearly establishes that, when requested, an examination under oath is a condition that must be satisfied before an insured has the right to bring an action against defendant. Such a condition "is a valid one and as a general rule enforceable, and one who without cause refuses to submit to examination should be precluded from maintaining an action on the policy." *Gordon v St Paul Fire & Marine Ins Co*, 197 Mich 226, 230; 163 NW 956 (1917). [*Yeo, supra* at 257.]

In our view, consistent with that of the *Yeo* panel, the policy provisions in question regarding EUOs necessarily allow State Farm to require an insured to appear for at least one EUO and, if the insured fails or refuses to submit to an EUO, the insured is precluded from maintaining an action on the policy. Here, the insureds failed or refused to submit to the EUO. Under *Yeo*, therefore, the Thomsons' action must be dismissed.

#### IV. WILFUL NONCOMPLIANCE

*Yeo* left open the question whether dismissal should be with or without prejudice:

Defendant argues that because plaintiff wilfully violated the condition of being examined under oath, the dismissal should be with prejudice. However, we find nothing on the record to indicate that plaintiff's failure to submit to the examination on October 25, 1994, was the result of a flat refusal to submit to such an examination. Therefore, we need not address the effect of wilful noncompliance on the general rule stated here. [*Id.* at 259.]

We believe it to be clear that, within the general framework of *Yeo*, if the noncompliance is wilful, the dismissal is to be with prejudice. On the other hand,

if the noncompliance is not wilful, the implication is that the dismissal is to be without prejudice.

*Yeo* did not provide a definition of "wilful noncompliance." However, *Yeo's* conclusion that the facts of that case did not involve wilful noncompliance is instructive. As noted above, the plaintiff in *Yeo* provided "a detailed, taped statement" after being requested to appear for an EUO and thereafter failed to appear for a scheduled EUO. *Id.* at 255. After failing to appear for the EUO *and* after a letter in which the defendant insurer rescheduled the EUO, the plaintiff in *Yeo* filed suit. *Id.* Accordingly, it is evident that the plaintiff in *Yeo knowingly* declined to appear for an EUO before filing suit. Nevertheless, this Court in *Yeo* did not regard this as wilful noncompliance. It follows that wilful noncompliance in this context involves something more than merely knowingly failing to appear for an EUO.

Therefore, the central issue confronting us here is the one that the *Yeo* panel declined to address: the proper definition of wilful noncompliance. Because this is a case of first impression in Michigan, we look for guidance to pertinent cases from other jurisdictions.

In *Taylor v Fireman's Fund Ins Co*, 306 So 2d 638, 639 (Miss, 1974), the plaintiff brought suit against the defendant insurer for a claim related to a house that had burned. The insurance policy in that case included a provision that "[t]he insured, as often as may be reasonably required, shall . . . submit to examinations under oath by any person named by this Company . . . ." *Id.* at 639 (emphasis omitted). The transcript of the EUO reflects that the plaintiff in *Tay-*

*lor*, in accordance with the advice of counsel, refused to answer several questions during the EUO including questions related to his financial status at the time of the fire. *Id.* at 640-644. The Mississippi Supreme Court concluded that the trial court properly directed a verdict for the defendant insurer, stating, *id.* at 644-645:

> The insured was required to answer these questions fully and completely, to give the best information he had about these matters.
>
> In Southern Guaranty Insurance Co v Dean, 252 Miss 69, 172 So 2d 553 (1965), the insurance policy involved contained the exact same provisions for a sworn examination of the insured before trial. In *Southern*, the trial court held that the policy had not been voided by the actions of the insured. This Court, in reversing, said:
>
> "We hold that insured failed and refused to answer questions in the examination under oath on matters which were material and relevant to the insurance and the loss, and failed and refused to produce for examination written documents which were pertinent and material to the insurance and loss. Failure of insured to comply in material respects with these contractual clauses bars her recovery under the policies. . . ."
>
> \*     \*     \*
>
> In Boston Insurance Co v Mars, 246 Miss 36, 148 So 2d 718 (1963), we closed our opinion with these words:
>
> "We think that the refusal of the insureds to submit to the examination under oath was a violation of the express provisions of the insurance policy, and resulted in a forfeiture of their right to recover under the policy; and that, therefore, the appellant was entitled to the requested peremptory instruction in its favor." 246 Miss at 43, 148 So 2d at 720.
>
> The circuit court was correct in peremptorily instructing the jury to find for the defendant.

Also instructive is *C-Suzanne Beauty Salon, Ltd v General Ins Co of America*, 574 F2d 106, 110-111 (CA 2, 1978),  in which the Second Circuit Court of Appeals, applying New York law,[6] stated:

> Although it is true, as we noted in *Hudson Tire [Mart, Inc v Aetna Casualty & Surety Co*, 518 F2d 671, 674 (CA 2, 1975)]*, that a refusal to appear for an examination under oath constitutes a material breach of the contract of insurance, it is also true, as a general principle of New York law, that "equity will not enforce forfeitures." *Hal Roach Studios, Inc v Film Classics, Inc*, 156 F2d 596, 599 (2d Cir 1946). Thus, in construing the cooperation clause, the New York Court of Appeals has held that "a breach which will defeat a recovery cannot be based upon technical or unimportant omissions or defects in the performance by either party." *Porter v Traders' Ins Co*, 164 NY 504, 509, 58 NE 641, 642-43 (1900). *Rather, a "willful and fraudulent withholding of information" must be shown. Happy Hank Auction Co v American Eagle Fire Ins Co*, 1 NY2d 534, 539, 154 NYS2d 870, 873, 136 NE2d 842, 844 (1956). In *Happy Hank*, the Appellate Division unanimously agreed that "it is clear that plaintiff has willfully and designedly refused to answer questions and produce documents that are indisputably material to its claim," 286 AD 505, 510, 145 NYS2d 206, 211-12 (1st Dep't 1955), and it granted summary judgment and ordered dismissal of the complaint. The Court of Appeals modified this order so as to reinstate the complaint, explaining that willfulness and fraud present "the kind of question of fact that cannot, except in the most extreme of cases, be resolved through the study of affidavits." 1 NY2d at 539, 154 NYS2d at 873, 136 NE2d at 844. [Emphasis supplied.]

---

[6]  *C-Suzanne* involved an action removed from a New York state court to federal court on the basis of diversity of citizenship. *C-Suzanne, supra* at 109.

*Marmorato v Allstate Ins Co*, 226 AD2d 156; 640 NYS2d 97 (1996),  is similarly instructive. There the court held:

> While it is clear that plaintiff's refusal, *upon advice of counsel,* to answer certain of the questions put to him at the examination under oath was a breach of his contractual obligation to cooperate with defendant's investigation (*see, Evans v International Ins Co*, 168 AD2d 374 [562 NYS2d 692 (1990)]),  and that circumstances of the claim appear suspicious, we agree with the [lower] Court that the non-compliance was not so willful or extreme as to warrant dismissal of the action without giving plaintiff one last chance to answer the questions (*see, Yerushalmi v Hartford Acc & Indem Co*, 158 AD2d 407 [551 NYS2d 242 (1990)]).  [*Id.* (emphasis supplied).]

Also, in *Averbuch v Home Ins Co*, 114 AD2d 827; 494 NYS2d 738 (1985),  the plaintiff insured brought suit against the defendant insurer to recover under a fire insurance policy covering premises that were damaged by two separate fires. *Id.* at 827. The insurance policy in that case included a provision requiring the insured to "as often as we reasonably require . . . submit to examination under oath and subscribe the same." *Id.* at 828. The *Averbuch* court provided the following factual background:

> After a preliminary investigation by the defendant insurer disclosed that the fires in June 1983 were incendiary in nature, plaintiff appeared for an examination under oath conducted by the defendant on November 22, 1983. Despite being warned by defendant's attorney that a refusal to answer material and relevant questions might lead to a disclaimer under the policy by the defendant, plaintiff refused to answer several patently material questions posed by defendant's counsel, including, *inter alia,* questions relating to the condition of the premises prior to the fires and plain-

tiff's financial status at that time. Despite two subsequent warning letters sent by defendant's counsel to plaintiff's counsel in December 1983 and January 1984, plaintiff (1) continued in his refusal to supply the answers to these material questions and (2) also failed to supply, in contrast to his promises at the examination under oath, an itemized list of expenditures alleged to have been made on the premises, along with any available documentation thereof. [*Id.*]

The defendant insurer moved for summary judgment on the basis of the plaintiff's failure to answer material questions during the EUO and failure to supply material information and documentation to the defendant. *Id.* The trial court ruled that it granted the motion unless the plaintiff supplied the defendant with certain documents. *Id.* However, the appellate court in *Averbuch* concluded that the defendant's motion for summary disposition should have been granted unconditionally. *Id.* at 829. The *Averbuch* court stated:

> The record herein demonstrates a *pattern of noncooperation with the insurer* for which no reasonable excuse was proffered. Under these circumstances, the plaintiff's willful refusal to answer material and relevant questions on his examination under oath by defendant and to supply material and relevant documentation constituted a breach of substantial conditions of the policy[.] [*Id.* (emphasis supplied).]

Informed by the above authority, we conclude that "wilful noncompliance" in the context at hand refers to a failure or refusal to submit to an EUO or otherwise cooperate with an insurer in regard to contractual provisions allowing an insurer to investigate a claim that is part of a *deliberate* effort to withhold

material information or a *pattern of noncooperation*
with the insurer.[7]

In the case before us, the Thomsons voluntarily
provided recorded statements to State Farm. We
regard this as at least a minimal showing that the
Thomsons were not deliberately intending to with-
hold material information from State Farm. However,
we emphasize that in future cases it will not be suffi-
cient to volunteer, or even to participate in giving,
unsworn statements to the insurer. As a practical mat-
ter, we recognize that virtually the only way by which
an insurer can demonstrate that an insured has delib-
erately withheld material information is through the
process of taking an EUO. Therefore, the burden
henceforth is on the *insured* to demonstrate that the
insured has not deliberately withheld material infor-
mation. This burden will be an extraordinarily diffi-
cult one to meet.[8]

---

[7] We note that State Farm cites *Goldman v State Farm Fire General
Ins Co*, 660 So 2d 300 (Fla App, 1995), in support of its position that the
Thomsons' claims should be dismissed with prejudice. In *Goldman*, the
court flatly stated, "[a]n insured's refusal to comply with a demand for an
examination under oath is a willful and material breach of an insurance
contract which precludes the insured from recovery under the policy." *Id.*
at 303. This blanket statement is, at least with respect to the issue of dis-
missal with versus dismissal without prejudice, inconsistent with *Yeo*.

[8] We note that the clarity of controlling case law is relevant to the
determination whether an insured has engaged in a pattern of noncooper-
ation with an insurer. In this case, before the release of the *Yeo* opinion,
the insureds would not submit to an EUO, but agreed to do so after their
legal obligation in that regard was made clear by *Yeo*. We find it entirely
appropriate to note that application of the same legal principle regarding
a pattern of noncooperation will differ in any possible future cases in
which an insured refuses to submit to an EUO despite the opinion in *Yeo*
(and in this case). We are therefore somewhat puzzled by the dissenting
opinion's assertion that we are "trying to engage in rule making for which
[this Court] has no authority." *Post* at 56. We recognize that in *People v
Sallee*, 63 Mich App 146, 149; 234 NW2d 180 (1975), this Court stated that
this Court "has no inherent rule-making power. What limited authority it

With respect to the second prong of the test we adopt today, we recognize that State Farm made repeated efforts to arrange the EUOs and that these efforts were either ignored or rebuffed by the Thomsons' counsel. Standing alone, these actions would be sufficient to find a pattern of noncooperation with the insurer. However, we note that the actions and nonactions of the Thomsons' counsel were taken before the decision in *Yeo*, when the extent of the obligation of an insured under an insurance policy with provisions substantially similar to those at issue in this case was perhaps questionable. Once again, we emphasize that the burden henceforth is on the *insured* to demonstrate that the insured has not engaged in a pattern of noncooperation and that this will also be an extraordinarily difficult burden to meet. It will certainly not be sufficient, for example, for an insured to seek "clarification" regarding the information that will be discovered in an EUO or to simply claim that the insureds "do not believe it to be reasonable" to submit to an EUO. Following our decision in this matter, it will be the rare case indeed in which a claim by an insured that its refusal to submit to an EUO did not amount to wilful noncompliance is upheld. Insureds, and the insureds' counsel, will be ill-advised to interpret our decision as anything approaching a license to disregard clearly binding contractual obligations.

---

has is by grace of the Supreme Court." However, we do not purport to adopt a rule, but, rather, to enunciate with some clarity the legal principles inherent in our holding in this case. We also do not see the pertinence of Const 1963, art 3, § 8, which provides a procedure in certain circumstances for either house of the Legislature or the Governor to request an advisory opinion from the Michigan Supreme Court regarding the constitutionality of legislation.

V. *YEO* AS BINDING PRECEDENT

We are, of course, bound to follow the holdings in *Yeo*, as a published decision of this Court issued on or after November 1, 1990, under MCR 7.215(H)(1). State Farm has not expressly asked us in its brief to issue a "conflicting opinion" under MCR 7.215(H)(2), following *Yeo* only because we are bound to do so. However, apparently as a criticism of *Yeo*, State Farm states:

> Inexplicably, however, *the Court of Appeals*, and the Trial Court, apparently had no difficulty in allowing a plaintiff to choose when the examination under oath will be taken, because "the defendant will still have the opportunity to examine the plaintiff, under oath." This cannot be termed "compliance." [Emphasis supplied.]

To prevent any doubt, we agree with the holding of *Yeo* that, as a general rule, a failure to comply with a requirement to submit to an EUO is not a complete bar to recovery, at least in the absence of wilful noncompliance. The holding in *Yeo* is far from being "inexplicable." Rather, it is eminently sensible as a particular application of the concept that the appropriate remedy for a minor breach of contract should be less extreme than the penalty for a substantial breach of contract. Again, we emphasize that in *Yeo* the insured knowingly failed to appear for an EUO. Nevertheless, the dismissal in *Yeo* was without prejudice. Clearly, then, a knowing failure to submit to an EUO, without more, does not rise to the level of wilful noncompliance. Equally clearly, however, in future cases the burden will be on the insured to show that the noncompliance was not wilful under the two-part test that we have outlined above.

We also find noteworthy the following observations in *Thompson v West Virginia Essential Property Ins Ass'n*, 186 W Va 84, 88; 411 SE2d 27 (1991) regarding a similar requirement to submit to an EUO in a fire insurance contract:

> The purpose of an oral examination under oath is to enable the insurer to obtain necessary and relevant information from the insured about the circumstances surrounding the fire loss and the value of the property destroyed. It also enables the insurer to determine rationally whether the insured is submitting a false or fraudulent claim.
>
> When this language was placed in the standard fire policy, the insurer was unable to obtain any discovery before or after a lawsuit was filed. This limitation substantially handicapped the insurer's defense against false or fraudulent fire loss suits. Today, much of this handicap has been removed because after suit is filed the insured's deposition can be taken, and he can be required to furnish relevant documents at that time.[9]

---

[9] While we recognize in our holding the right of an insurer to conduct an EUO of an insured, we also recognize the limited, although certainly not inconsequential, importance of this right in light of the liberal discovery procedures available under the Michigan Rules of Evidence.

There is reference to a differing view of the importance of an EUO, expressed in *Goldman*, n 7, *supra* at 305:

> The policy does not provide that depositions may be substituted for examinations under oath as appellants suggest. Rather, depositions and examinations under oath serve vastly different purposes. First, the obligation to sit for an examination under oath is contractual rather than arising out of the rules of civil procedure. Second, an insured's counsel plays a different role during examinations under oath than during depositions. Third, examinations under oath are taken before litigation to augment the insurer's investigation of the claim while a deposition is not part of the claim investigation process. Fourth, an insured has a duty to volunteer information related to the claim during an examination under oath in accordance with the policy while he would have no such obligation in a deposition. Finally, the insurer has the right to examine [the] insured independently in sworn examinations while it would have

A number of jurisdictions treat a knowing failure to appear for an EUO as a material breach of policy language substantially the same as the policy language at issue in this case and as absolutely barring any right to recovery. See, e.g., *Watson v Nat'l Surety Corp of Chicago, Illinois*, 468 NW2d 448, 450-451 (Iowa, 1991); *Downie v State Farm Fire & Casualty Co*, 84 Wash App 577, 580-586; 929 P2d 484 (1997); *Goldman v State Farm Fire General Ins Co*, 660 So 2d 300 (Fla App, 1995). However, a number of other jurisdictions decline to require an absolute rule of complete forfeiture of an insured's right to recovery based on a knowing failure to appear for an EUO. See, e.g., *Thompson, supra; Abraham v Farmers Home Mut Ins Co*, 439 NW2d 48, 49-50 (Minn App, 1989); *Farm Bureau Town & Country Ins Co of Missouri v Crain*, 731 SW2d 866, 871 (Mo App, 1987). Here, we con-

---

no parallel right to do so under the Florida Rules of Civil Procedure.

In this regard, one pertinent difference between an EUO and a deposition under the Michigan Court Rules in this case is that State Farm would be able to question William Thomson and Susan Thomson outside the other's presence at separate EUOs. In contrast, at a deposition, MCR 2.306 contemplates that all parties to the action would have a right to attend the deposition so that, as parties to this action, William Thomson and Susan Thomson could not be excluded from each other's depositions. MCR 2.306(B)(1) provides that "[a] party desiring to take the deposition of a person on oral examination must give reasonable notice in writing to every other party to the action." MCR 2.306(C)(1) provides that "[e]xamination and cross-examination of the witness [at the deposition] shall proceed as permitted at a trial under the Michigan Rules of Evidence." In order to be able to effectively conduct such cross-examination, a party would, of course, have to be allowed to be present throughout the deposition. While we do not find the Thomsons' breach of their obligation to submit to EUOs necessarily constitutes a substantial breach of contract, it was clearly at least a minor breach. As indicated above, to remedy that breach, William Thomson and Susan Thomson must individually make themselves available to State Farm for EUOs forthwith after the dismissal of this case as a precondition to the Thomsons' refiling this action.

clude that *Yeo* reached the correct result and apply it to the circumstances of this case. In so doing, we hold that if the noncompliance is wilful, the dismissal must be with prejudice; if the noncompliance is not wilful, the dismissal must be without prejudice. We further hold that henceforth, the insured must show that there was not a deliberate effort to withhold material information (as opposed to a knowing failure to submit to an EUO) or a pattern of noncooperation with the insurer.

### VI. CONCLUSION

We reverse the order of the trial court and remand to the trial court for entry of an order dismissing this case without prejudice in light of the fact that *Yeo* had not been decided when the Thomsons failed to comply with State Farm's legitimate request for EUOs. We do not retain jurisdiction. No costs, neither party having prevailed in full.

Reversed and remanded.

HOEKSTRA, J., concurred.

GRIFFIN, P.J. (*dissenting*). I agree that the order of the lower court must be reversed. However, I would reverse with prejudice because the undisputed facts clearly establish that plaintiffs engaged in "wilful noncompliance" with a condition precedent to maintaining an action on the insurance contract.

It appears that the majority is trying to engage in rule making for which it has no authority. *People v Sallee*, 63 Mich App 146, 149; 234 NW2d 180 (1975). See also Const 1963, art 3, § 8. The majority hopes that "henceforth" its legal conclusions will be applied to prospective cases. Nevertheless, the rule of law

that the majority endorses, but does not apply, is mere dicta. As the Supreme Court stated in *Hett v Duffy*, 346 Mich 456, 461; 78 NW2d 284 (1956), quoting with approval *People v Case*, 220 Mich 379, 382-383; 190 NW 289 (1922):

> "Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand, are, however illuminating, but *obiter dicta* and lack the force of an adjudication."

The majority does not apply its rule of wilful noncompliance because "the actions and nonactions of the Thomsons' counsel were taken before the decision in *Yeo*, when the extent of the obligation of an insured under an insurance policy with provisions substantially similar to those at issue in this case was perhaps questionable." *Ante* at 52. I respectfully disagree. The provision of the insurance policy in dispute is the "plain English" version of the statutorily mandated language contained in all fire insurance contracts until January 1, 1992. 1990 PA 305; see former MCL 500.2832; MSA 24.12832. Over eighty years ago in *Gordon v St Paul Fire & Marine Ins Co*, 197 Mich 226, 230-231; 163 NW 956 (1917), the Supreme Court held that this policy provision is valid and is a condition precedent to maintaining an action on an insurance contract:

> The provision of the policy above quoted is a valid one and as a general rule enforceable, and one who without cause refuses to submit to examination should be precluded from maintaining an action on the policy. The purpose of the examination is to elicit the facts in order that

the company may determine whether it will defend or adjust the claim. . . .

. . . Under the circumstances of this case the request of the plaintiff that her attorney be present when such examination took place did not amount to a refusal to submit to an examination so as to preclude her right of recovery.

On this issue, *Yeo v State Farm Ins Co*, 219 Mich App 254; 555 NW2d 893 (1996), did not change our insurance law, but, rather, reaffirmed the existing law as set forth in *Gordon, supra*. See also 5A Appleman, Insurance Law & Practice, § 3549, pp 549-553; 13A Couch, Insurance, 2d (rev ed), § 49A:361, pp 759-762; anno: *Requirement under property insurance policy that insured submit to examination under oath as to loss*, 16 ALR5th 412.

Additionally, the majority has erred by mischaracterizing the facts of *Yeo*. As stated by the *Yeo* panel, plaintiff Yeo's failure to comply with the defendant's request for an examination under oath (EUO) was not a "flat refusal." *Yeo, supra* at 259. Rather, among other defenses, the plaintiff in *Yeo* argued in her appeal brief that the timing of the defendant's request was not reasonable under the circumstances (scheduled only twenty days after the plaintiff was interrogated by the defendant's representative for a thirty-two-page transcribed statement). Therefore, the plaintiff in *Yeo* asserted that her failure to appear for the EUO should be excused. In contrast to *Yeo*, the present case involves no proffered excuses regarding the timing or location of defendant's multiple EUO requests, but, rather, plaintiffs' "flat refusal" to comply.

In my view, an insured's "wilful noncompliance" with the EUO condition precedent constitutes a mate-

rial breach of the insurance contract thereby mandating dismissal with prejudice. In regard to the term "wilful," I would adopt the Black's Law Dictionary (6th ed) definition:

> A willful act may be described as one done intentionally, knowingly, and purposely, without justifiable excuse, as distinguished from an act done carelessly, thoughtlessly, heedlessly, or inadvertently. A willful act differs essentially from a negligent act. The one is positive and the other negative.

This well-articulated standard is consistent with our prior definitions of the term. See *Pavlov v Community Emergency Medical Service, Inc*, 195 Mich App 711, 716; 491 NW2d 874 (1992), and cases cited therein.

The majority has formulated a two-pronged definition for wilful noncompliance: "a deliberate effort to withhold material information . . . or a pattern of noncooperation with the insurer." *Ante*, at 55. While this definition may be helpful in other cases in which only circumstantial evidence of intent is present, in the instant case the proposed test is irrelevant in light of the direct evidence of plaintiffs' intent not to comply. There is no genuine factual dispute that plaintiffs' noncompliance regarding defendant's numerous requests for an EUO was committed "intentionally, knowingly, and purposely, [and] without justifiable excuse . . . ." Black's Law Dictionary, *supra*.[1] On this

---

[1] Defendant's numerous EUO requests and warnings of the consequence of noncompliance are detailed in footnote number three of the majority opinion. In his letter of May 14, 1996, plaintiffs' counsel wrote that his clients would not submit to an EUO unless defendant could convince them that an EUO would serve a useful purpose. Consistent with this letter, plaintiffs have represented the following facts in the introduction of their appeal brief:

basis, I would hold that plaintiffs' noncompliance was wilful thereby mandating dismissal of plaintiffs' complaint with prejudice.

Finally, I note that the relief ordered by the majority appears moot. The one-year period of limitation contained in the policy ostensibly bars the refiling of this action. Further, a sworn examination at this late date would not fulfill the purposes of an EUO. See *Watson v Nat'l Surety Corp of Chicago, Illinois,* 468 NW2d 448; 16 ALR5th 1047 (Iowa, 1991).

For these reasons, I respectfully dissent. I would reverse the order of the trial court and remand for entry of an order dismissing the action with prejudice.

---

Despite the information Appellees had already provided, State Farm requested further examination under oath. State Farm's adjuster indicated to Appellees that State Farm did not believe their claim. Appellees believed, therefore, that submitting to further investigation with State Farm would be pointless. Consequently, appellees did not submit to examination under oath.