*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CLYDE KEMP,

      Plaintiff-Appellant,

v

STATE FARM FIRE & CASUALTY COMPANY,

      Defendant-Appellee.

UNPUBLISHED
October 19, 2023

No. 362751
Oakland Circuit Court
LC No. 2021-189047-CK

Before: CAVANAGH, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

In this homeowner's insurance policy dispute, plaintiff, Clyde Kemp, appeals as of right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendant, State Farm Fire & Casualty Company. The trial court did not err by finding that Kemp failed to meet his burden to establish a covered loss that would entitle him to payment for the costs associated with the tear out and repair of the pipes and his personal property damages. Kemp also failed to fulfill his duties to provide State Farm with the requested documents as required by the policy. Accordingly, the trial court did not err by granting summary disposition to State Farm. We affirm.

## I. BACKGROUND

Kemp owns a residence ("the property"), insured under a homeowner's insurance policy ("the policy") issued by State Farm. On February 4, 2021, a plumbing technician from Frost & Kretsch Plumbing, Inc. performed a main drain cleaning and a camera inspection of the property. The technician documented that the main sanitary sewer pipe was open and flowing, and the camera indicated there were no major issues.

On February 5, 2021, the property's basement flooded with about 7 to 8 inches of water and fecal matter that had come through the basement's floor drain. Kemp maintains that the flood water stained the walls of the basement and damaged personal property. Kemp was informed that there was an "abrupted line" in the basement, but he was not sure whether the "line" was broken. On February 12, 2021, Kemp notified State Farm of the incident, claiming the two broken pipes beneath the basement and bathroom caused the flooding.

-1-

Kemp hired Mark Davenport, an independent insurance adjuster, to inspect the property and provide an estimate for the cost of repairs. Davenport did not observe any damage to the basement or bathroom, nor did he inspect the plumbing system or render an opinion regarding what caused the damage to the property. Based on Kemp's reports of the damage and his assessment of the work needed to access the pipes beneath the bathroom and basement floors, Davenport estimated the total cost for repairs would be $23,799.29.

On March 26, 2021, Kemp notified State Farm that another back up occurred in the basement. On the same date, a plumbing technician from Frost & Kretsch performed a second main drain cleaning, and documented that although the technician was "[u]nable to get past [the] trap," the sewer pipe was open and flowing. But State Farm's claim specialist, Jason McClelland, documented in his log notes that Kemp informed him the plumber from Frost & Kretsch found a collapsed pipe beneath the basement floor during the camera inspection.

On March 30, 2021, McClelland inspected the property. Although he never personally observed the physical pipes, Kemp showed him a video of the pipes and made representations that there was a break in the pipes under the bathroom. McClelland spoke with a plumber named "Mark"[1] who informed him the damage was caused by collapsed or failed pipes beneath the basement and bathroom. Although McClelland never received a written report from the plumber, the plumber provided a photograph of the failed pipe.

On April 6, 2021, State Farm denied Kemp's claim, except "for the clean up and damages sustained from the fill up of the basement floor drain." State Farm relied on various policy exclusions to deny coverage for the drain access, drain repairs, and water damage. State Farm maintained that wear and tear caused the pipes to collapse. This conclusion was allegedly based on McClelland's inspection, investigation, and discussion with Kemp's plumber. State Farm further asserted that the water did not escape from the broken pipes but overflowed from the floor drains. And because the damages did not render the property uninhabitable, State Farm denied benefits for additional living expenses.

Kemp filed a complaint against State Farm for breach of contract. He alleged the property "sustained severe water damage resulting from water overflowing from the floor drain, causing Plaintiff to sustain additional living expenses." Because State Farm failed to pay for his claim, Kemp averred he was entitled to damages and interest under MCL 500.2006. State Farm denied the allegations as untrue and asserted various affirmative defenses, relevant here: (1) the policy's latent defect exclusions applied because the damage to the pipes was caused by wear, tear, deterioration, or decay; (2) there was no coverage for the tear-out because the loss did not cause water to escape from a system or appliance; and (3) Kemp did not comply with his duties under the policy because he failed to provide an inventory for damaged personal property and evidence related to his clean-up and mitigation costs.

Kemp filed his initial disclosures under MCR 2.2032(A)(1)(f), and provided a computation of damages. He claimed he suffered $31,000 in property loss damages. He included an estimate

---

[1] McClelland could not recall the plumber's last name during his deposition. Kemp provided McClelland with Mark's contact information.

from L. Micks Building, LLC for $30,268 in costs associated with tearing out the bathroom and basement, and repairing the pipes. Kemp also claimed damages to replace personal property, but listed the damages amount as "TBD."

After discovery, State Farm moved for summary disposition under MCR 2.116(C)(10), arguing Kemp failed to meet his burden of proving the loss was covered by the policy. State Farm asserted that Kemp did not identify a sudden event that caused the pipe to break. State Farm maintained that the undisputed evidence confirmed that the damages were "the result of wear and tear and deterioration of the pipe (as observed by State Farm)" and "the policy expressly excludes coverage for damages resulting from, or being in any way caused by 'wear and tear' and/or deterioration." State Farm further asserted even if a covered event contributed to the pipe damage, the loss was excluded under an anticoncurrent causation clause because wear and tear or deterioration contributed to the pipe breaks. Additionally, State Farm contended that there was no coverage for the tear out to access the damaged pipes because the water overflowed from the basement floor drain and did not escape from the broken pipes. Finally, State Farm argued that Kemp's breach-of-contract claim was barred because he failed to comply with his postloss duties under the policy to prepare and provide to State Farm an inventory of damaged personal property and documentation of his clean-up and mitigation costs.

In response, Kemp argued that State Farm could not show there were broken pipes or that any alleged breaks in the pipes were caused by wear and tear or deterioration. Kemp maintained that McClelland never physically inspected the property, pipes, or plumbing system. Rather, State Farm relied solely on what Davenport "allegedly advised Mr. McClelland and/or of Mr. McClelland's alleged conversation with a plumber." Kemp asserted that Davenport denied telling McClelland the basement drain line collapse caused a backup from the floor drain. In fact, Davenport maintained that he could not make that determination because he is not a plumber. Kemp further maintained that the invoices from Frost & Kretsch showed there were no issues related to a broken pipe.

State Farm replied, arguing Kemp failed to present any evidence the property sustained a covered loss and failed to identify any cause of loss. Additionally, because Kemp failed to address State Farm's arguments regarding the anticoncurrent causation and tear-out provisions or Kemp's claim of damages for personal property loss and clean-up and mitigation expenses, State Farm asserted he abandoned those claims.

The trial court granted State Farm's motion for summary disposition, finding there was no genuine issue of material fact that the only covered event Kemp suffered was the overflow of water and fecal matter through the basement floor drains, which would only entitle him to costs for water mitigation and clean up services. Because Kemp failed to provide any evidence that he incurred actual damages as a result of the covered event, the court found that State Farm was entitled to summary disposition. This appeal followed.[2]

---

[2] On appeal, State Farm moved to affirm the trial court's order granting its motion for summary disposition under MCR 7.211(C)(3)(a), which we denied. *Kemp v State Farm Fire & Cas Co*, unpublished order of the Court of Appeals, entered May 10, 2023 (Docket No. 362751).

## II. ANALYSIS

Kemp argues the trial court erred by granting summary disposition to State Farm because State Farm failed to meet its burden of proving Kemp was excluded from the policy's coverage. We disagree.

## A. WAIVED ARGUMENTS

In a civil case, a party waives a claim of error that the party did not properly preserve by bringing the issue to the trial court's attention. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 3. We will generally decline to address an unpreserved issue unless the failure to do so would result in manifest injustice, if the issue involves a question of law and the facts necessary for its resolution have been presented, or resolving the issue is necessary to properly determine the case. *Miller v Mich Dep't of Corrections*, __ Mich App __, __; __ NW2d __, (2022) (Docket No. 356430); slip op at 7. Our Supreme Court has cautioned that this discretion should be exercised sparingly and only in exceptional circumstances. *Napier v Jacobs*, 429 Mich 222, 233-234, 414 NW2d 862 (1987).

For the first time on appeal, Kemp relies on the doctrine of res ipsa loquitur to argue that the trial court erred by granting summary disposition because State Farm failed to prove an exclusion in the policy precluded coverage. Although "a party is generally free to make a more sophisticated or fully developed argument on appeal," *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020), Kemp has offered a completely different theory to support his claim. This argument is unpreserved. See *id*. at 227. Because Kemp failed to properly preserve this argument for appellate review, it is waived and we decline to consider it. See *Tolas Oil & Gas Exploration Co*, ___ Mich App at ___; slip op at 2.[3]

## B. STANDARDS OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When reviewing a motion for summary disposition under MCR 2.116(C)(10), a trial court must consider the evidence submitted by the parties in the light most favorable to the non-moving party and may only grant the motion if there is no genuine issue of material fact. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (cleaned up). But "[t]he court is not permitted to assess credibility, or to determine facts" in analyzing whether a genuine issue of material fact exists. *Skinner v Square D*

---

[3] Even if Kemp had properly preserved this argument, his reliance on res ipsa loquitor in this breach of contract action is misplaced. Res ipsa loquitor is a tort principle. "The major purpose of the doctrine of res ipsa loquitur is to create at least an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act. . . ." *Woodard v Custer*, 473 Mich 1, 7; 702 NW2d 522 (2005) (cleaned up; ellipsis in original). It is undisputed that Kemp did not assert a negligence claim.

*Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

We also review de novo the interpretation of a contract. *DaimlerChrysler Corp v G Tech Prof Staffing, Inc*, 260 Mich App 183, 184; 678 NW2d 647 (2003).

## C. ANALYSIS

A plaintiff claiming a breach of contract must prove: "(1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601; 865 NW2d 915 (2014). "The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 550; 904 NW2d 192 (2017) (cleaned up). "Although breach-of-contract damages need not be precisely established, uncertainty as to the fact of the amount of damage caused by the breach of contract is fatal[.]" *Id*. at 551.

Insurance policies are interpreted like any other contract. *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 291-292; 778 NW2d 275 (2009). The policy is read as a whole "to determine and effectuate the parties' intent," and "[t]he terms of the contract are accorded their plain and ordinary meaning." *Id*. at 292. If the contractual language is unambiguous, the contract will be enforced as written. *Meemic Ins Co v Fortson*, 506 Mich 287, 297; 954 NW2d 115 (2020). "[A]ny clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." *Id*. (cleaned up). "A two-step analysis is used when interpreting an insurance policy: first, does the general insurance policy provide coverage for the occurrence, and second, if coverage exists, does an exclusion negate the coverage?" *Auto Owners Ins Co v Chad Seils*, 310 Mich App 132, 146; 871 NW2d 530 (2015) (citation omitted). The insured bears the burden of first establishing that the claim "falls within the terms of the policy," while the insurer bears the burden of establishing that coverage is negated by an exclusion. *Id*. Exclusionary clauses are strictly construed in favor of the insured. *Id*. However, "clear and specific exclusions will be enforced as written so that the insurance company is not held liable for a risk it did not assume." *Id*. at 146-147.

Kemp presents conflicting arguments regarding his claim and, by extension, what damages he is owed from State Farm. In his complaint, Kemp claimed the property "sustained severe water damage resulting from water overflowing from the floor drain, causing Plaintiff to sustain additional living expenses." Kemp testified the basement walls sustained water damage. However, Kemp did not seek to recoup the costs of repairing the water damage to the basement or for additional living expenses. Instead, Kemp sought $31,000 in property damage for costs associated with tearing out the bathroom and basement floors to repair two broken pipes, and an amount "TBD" for personal property damage. In support of his claim, Kemp submitted the $30,268 repair estimate from L. Micks Building, LLC and Davenport's testimony that he provided a repair estimate totaling $23,799.99. But in his response to State Farm's motion for summary disposition, Kemp expressly denied the pipes sustained any damage, arguing there was no evidence to support such a conclusion. And he makes the same argument on appeal.

"In general, parties are permitted to plead inconsistent claims and facts in the alternative." *AFSCME Council 25 v Faust Public Library*, 311 Mich App 449, 459; 875 NW2d 254 (2015). Kemp is not making inconsistent claims or arguing alternative facts; he is seeking damages for a loss he claims *does not* exist. Kemp had the initial burden of proving: (1) his claim "falls within the terms of the policy"; and (2) his damages with reasonable certainty. See *Auto Owners*, 310 Mich App at 146; *Van Buren Charter Twp*, 319 Mich App at 550. If Kemp met that burden, the burden would have shifted to State Farm to prove an exclusion applies. *Auto Owners*, 310 Mich App at 146-147. Kemp seeks the costs associated with tearing out the bathroom and basement floors to repair two broken pipes, and an amount "TBD" for personal property damage caused by the broken pipes. But Kemp contradicted his claim by expressly denying the pipes sustained any damage. He offered no evidence to establish the cause of the claimed loss. He also failed to present any evidence of personal property damages, the clean-up and mitigation expenses, or additional living expenses. Accordingly, the trial court did not err by finding that Kemp failed to meet his burden to establish a covered loss that would entitle him to payment for the costs associated with the tear out and repair of the pipes. And because Kemp failed to present any evidence of the clean-up and mitigation expenses, additional living expenses, or personal property damages, the trial court did not err by finding no genuine issue of material fact exists.

Kemp also failed to comply with his duties under the policy before filing suit against State Farm. An insured's noncompliance with conditions precedent in a policy before commencing an action is a basis for dismissal of the action. *Thomson v State Farm Ins Co*, 232 Mich App 38, 44-53; 592 NW2d 82 (1998). The policy states, in relevant part:

## SECTION I–CONDITIONS

2. **Your Duties After Loss**. After a loss to which this insurance may apply, *you* must cooperate with us in the investigation of the claim and also see that the following duties are performed:

a. give immediate notice to *us* or *our* agent. . . .

* * *

b. protect the property from further damage or loss and also:

(1) make reasonable and necessary temporary repairs required to protect the property; and

(2) keep an accurate record of repair expenses;

c. prepare an inventory of damaged or stolen personal property:

(1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and

(2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory;

d.     as often as we reasonably require:

    (1)     exhibit the damaged property;

    (2)     provide *us* with any requested records and documents and allow us to make copies. . . .

e.     submit to *us*, within 60 days after the loss, *your* signed, sworn proof of loss that sets forth, to the best of *your* knowledge and belief:

    (1)     the time and cause of loss;

    (2)     interest of the *insured* and all others in the property involved and all encumbrances on the property;

    (3)     other insurance that may cover the loss;

    (4)     changes in title or occupancy of the property during the term of this policy;

    (5)     specifications of any damaged structure and detailed estimates for repair of the damage;

    (6)     an inventory of damaged or stolen personal property described in 2.c.;

    (7)     receipts for additional living expenses incurred and records supporting the fair rental value loss; and

    (8)     evidence or affidavit supporting a claim under **SECTION I– ADDITIONAL COVERAGES, Credit Card, Bank Fund Transfer Card, Forgery, and Counterfeit Money** coverage, stating the amount and cause of loss.

\* \* \*

6.    **Suit Against Us.**  No action will be brought against *us* unless there has been full compliance with all of the policy provisions.  Any action by any party must be started within one year after the date of loss or damage.  The time for commencing an action is tolled from the time *you* notify *us* of the loss until *we* formally deny liability.

State Farm conceded the policy covered repairs for water damage and clean-up and mitigation expenses, but informed Kemp he would need to provide proof of the damage and expenses incurred to recoup payment.  Despite repeated requests by State Farm, the record shows Kemp never submitted any evidence or information to State Farm regarding the water damage clean-up and mitigation expenses.  In fact, Kemp allegedly told McClelland that he was not concerned about recouping those costs.  In granting State Farm's motion for summary disposition,

the trial court stated, in relevant part: "[T]he court also holds that plaintiff has failed to come forward with any evidence that [he] has incurred actual damages as a result of the [water mitigation and clean-up costs]." Kemp also admitted he never submitted any information to State Farm regarding the alleged personal property damage, nor is there any indication Kemp even notified State Farm of any personal property damage before commencing this action. Moreover, Kemp did not even respond to the argument regarding his personal property damages in State Farm's motion for summary disposition. Because Kemp failed to fulfill his duties to provide State Farm with the requested documents as required by the policy and failed to present evidence of his personal property damages or water damage clean-up and mitigation expenses, the trial court did not err by granting State Farm summary disposition.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Sima G. Patel