*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MALICK GUEYE,

Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and SHANNON LEE
HOOD,

Defendants-Appellees.

FOR PUBLICATION
September 22, 2022
9:30 a.m.

No. 358992
Oakland Circuit Court
LC No. 2021-186759-NI

Before: CAVANAGH, P.J., and GARRETT and YATES, JJ.

GARRETT, J.

Plaintiff Malick Gueye appeals as of right the trial court's order dismissing Gueye's claims against defendant State Farm for both uninsured/underinsured motorist (UM/UIM) benefits and no-fault personal protection insurance (PIP) benefits. We affirm the portion of the order dismissing Gueye's UM/UIM claim but remand for the trial court to determine whether dismissal is with or without prejudice. We vacate the portion of the order dismissing Gueye's no-fault claim and remand for further proceedings.

## I. FACTUAL BACKGROUND

This case arises out of an automobile accident involving Gueye and defendant, Shannon Lee Hood,[1] that occurred on March 8, 2020. After the accident, Gueye filed a claim with State Farm, his automobile insurer. State Farm requested that Gueye appear for an insurance medical examination (IME)[2] on September 16, 2020; Gueye did not attend. State Farm also requested that

---

[1] Claims against Hood are not a subject of this appeal.

[2] Although the trial court and the parties refer to this examination as an "independent medical examination," this opinion instead refers to the examination as an insurance medical examination. As we observed in *Micheli v Mich Auto Ins Placement Facility*, ___ Mich App ___, ___; ___

Gueye appear for an examination under oath (EUO) on October 6, 2020 and scheduled another IME on October 28, 2020. Gueye's counsel responded to the request on September 24, 2020, sharing that Gueye would soon be out of the country but expressing willingness to schedule an EUO over Zoom. On October 1, 2020, State Farm denied Gueye's claim for no-fault benefits for failure to appear at the September 16, 2020 IME. State Farm also followed up with Gueye's counsel about scheduling an EUO on November 10, 2020, but Gueye's counsel explained that a lawsuit would be filed shortly, making the EUO duplicative of a deposition that would likely occur during litigation.

Gueye filed a complaint on March 8, 2021, alleging that State Farm had unreasonably refused to pay him both UM/UIM benefits and no-fault PIP benefits under the Michigan no-fault act, MCL 500.3101 *et seq*.[3] State Farm moved the trial court for summary disposition, arguing that Gueye's failure to attend the EUO and the IME—prerequisites to recovery under the applicable policy—precluded him from collecting UM/UIM benefits. State Farm also contended that Gueye's failure to appear for an IME justified dismissal of the claim for PIP coverage under the statutory provisions of the no-fault act.

In an order, the trial court concluded:

> Defendant correctly states that the Michigan No-Fault Act does not require insurers to provide [UM or UIM] protection. When this coverage is elected the provisions of the contract, rather than statute, govern all disputes.

> The contract between the parties clearly states that Plaintiff's submission to both an independent medical examination (IME) and an examination under oath (EUO) are required as conditions precedent to the Plaintiff's ability to file suit. Plaintiff failed to submit to either an IME or an EUO prior to filing the Complaint in this matter. When Defendant learned that a Complaint was forthcoming, it stated that the examinations were unnecessary, as they would be duplicative of discovery in the matter.[4] Plaintiff claims that this amounts to waiver by Defendant. This

---

NW2d ___ (2022) (Docket No. 356559); slip op at 2 n 3, the commonly used phrase "independent medical examination" is a "euphemistic term of art." In the insurance context, "an IME involves obtaining a second opinion from a doctor who is entirely selected and paid for by an insurance company, rendering the 'independence' of the examination somewhat questionable." *Id*.

[3] Our Legislature recently amended the no-fault act, effective June 11, 2019. 2019 PA 21.

[4] This sentence in the trial court's order is factually mistaken; it was Gueye's attorney, not State Farm, who expressed that an EUO was unnecessary because it would be duplicative of discovery conducted during a lawsuit.

argument fails, as the lawsuit was already in motion.[5]  Accordingly, the Plaintiff's claims for UM/UIM [benefits] are denied.

Conversely, PIP benefits are statutorily required.  Plaintiff's failure to submit to an IME or to an EUO as required by MCL 500.3151 and MCL 500.3153 respectively, preclude Plaintiff from receiving benefits.  Each section requires the Plaintiff to submit to examinations to be entitled to PIP benefits.  The Plaintiff has submitted to neither the IME nor the EUO.

For these reasons, Defendant's Motion for Summary Disposition and Dismissal of PIP and UM/UIM benefits is granted, and the case is hereby dismissed.

Gueye moved the trial court for reconsideration, arguing in part that the severe sanction of dismissal for missed IMEs was not a "just" order under MCL 500.3153.  The trial court denied the motion for reconsideration, and this appeal followed.

## II.  UM/UIM BENEFITS

Gueye argues that the trial court erred by granting summary disposition to State Farm and dismissing his claim for UM/UIM benefits.

## A.  STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10).[6]  *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003).  "De novo review means that we review the legal issue independently" and without deference to the trial court.  *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

Under MCR 2.116(C)(10), the party moving for summary disposition is entitled to judgment as a matter of law when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact."  The reviewing court "considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR

---

[5] At the time Gueye's attorney communicated that an EUO was unnecessary, the attorney represented that a lawsuit was forthcoming.  But as previously discussed, Gueye did not file his complaint until March 8, 2021.

[6] The trial court did not specify which court rule it relied on when granting State Farm's motion for summary disposition, nor did State Farm file its motion under a particular section of MCR 2.116.  Because State Farm submitted evidence beyond the pleadings in support of its motion, we construe the trial court as having granted summary disposition under MCR 2.116(C)(10).  See *Krass v Tri-County Security, Inc*, 233 Mich App 661, 664-665; 593 NW2d 578 (1999) ("Where the record is unclear with regard to which section of MCR 2.116 the trial court based its ruling, and both the defendant and the trial court relied on documentary evidence beyond the pleadings in support of the defendant's motion for summary disposition, this Court must construe the defendant's motion as being granted pursuant to MCR 2.116(C)(10).").

2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The moving party has the initial burden to support its position; once met, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists. *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

We also review de novo the interpretation of a contract, such as an insurance policy. *Webb v Progressive Marathon Ins Co*, 335 Mich App 503, 507; 967 NW2d 841 (2021).

B.  ANALYSIS

The no-fault act "created a compulsory motor vehicle insurance program under which insureds may recover directly from their insurers, without regard to fault, for qualifying economic losses arising from motor vehicle incidents." *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). The no-fault act, however, does not require UM/UIM coverage; therefore, the terms of the insurance contract control any potential entitlement to UM/UIM benefits. *Stoddard v Citizens Ins Co of America*, 249 Mich App 457, 460; 643 NW2d 265 (2002).

Insurance contracts are subject to the rules of contractual interpretation, and "the primary goal is to honor the intent of the parties." *Webb*, 335 Mich App at 507-508 (quotation marks and citation omitted). "Where the language of an insurance policy is clear and unambiguous, it must be enforced as written." *Auto-Owners Ins Co v Harvey*, 219 Mich App 466, 469; 556 NW2d 517 (1996). "An insurer is free to define or limit the scope of coverage as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy." *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 161; 534 NW2d 502 (1995). EUO provisions "require the insured to answer questions about the accident and damages claimed," and insurers conduct EUOs, in part, "to gather facts so as to discover and eliminate fraudulent insurance claims." *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 597; 648 NW2d 591 (2002). An insurance policy provision requiring compliance with an EUO "before an insured has the right to bring an action against [an insurer]" is generally a valid and enforceable condition. *Yeo v State Farm Ins Co*, 219 Mich App 254, 257; 555 NW2d 893 (1996). Thus, "one who without cause refuses to submit to examination should be precluded from maintaining an action on the policy." *Id*., quoting *Gordon v St. Paul Fire & Marine Ins Co*, 197 Mich 226, 230; 163 NW 956 (1917).

In this case, the insurance contract states that an insured making a claim for UM/UIM benefits "must, at [State Farm's] option, submit to an examination under oath . . . as reasonably often as [State Farm] require[s]." The insurance contract also states that a claimant for UM/UIM benefits must "be examined as reasonably often as [State Farm] may require by physicians, doctors, and healthcare professionals chosen and paid by [State Farm]." These two provisions establish that a claimant for UM/UIM benefits must (1) submit to an EUO as reasonably often as State Farm requires and (2) submit to an IME as reasonably often as State Farm requires. Finally, the insurance contract states that legal action may not be brought against State Farm if the claimant

-4-

has not complied with the provisions described above. Put another way, compliance with a requested EUO or IME is a condition precedent[7] to suing State Farm for UM/UIM benefits.

As discussed earlier, because UM/UIM benefits are not required by the no-fault act, the terms of the insurance contract control any potential entitlement to UM/UIM benefits. *Stoddard*, 249 Mich App at 460. The trial court correctly observed that the insurance contract unambiguously provided that "Plaintiff's submission to both an [IME] and an [EUO] are required as conditions precedent to the Plaintiff's ability to file suit." This was a valid and enforceable contract provision, see *Yeo*, 219 Mich App at 257, and it is undisputed that Gueye failed to submit to both the IME and EUO that State Farm requested. Therefore, the trial court did not err in dismissing Gueye's claim for UM/UIM benefits because there was no genuine issue of material fact that Gueye violated a contractual requirement that was a necessary condition precedent to filing suit.

Gueye asserts in response that State Farm "tacitly" waived the EUO requirement through its correspondence with Gueye's counsel and thus cannot rely on this policy provision to deny UM/UIM benefits. This argument misconstrues the facts and the law.

Gueye's argument rests of the following chain of events:

1) On October 12, 2020, State Farm followed up with Gueye's counsel about scheduling an EUO over Zoom.

2) Gueye's counsel replied:

   I would have as I indicated in my prior email; however, your client decided to suspend [Gueye's] benefits due to a single missed IME so I don't see the point in further cooperation. In light of that letter we are likely going to file a lawsuit shortly and will then have an obligation to sit for deposition anyway.

3) On October 20, 2020, State Farm requested that Gueye appear for a November 10, 2020 EUO.

4) On November 9, 2020, State Farm followed up on its request for a November 10, 2020 EUO.

5) An employee of Gueye's counsel responded: "[Gueye's counsel] advised in his 10/12 email that a lawsuit would be forthcoming as benefits were previously terminated, and an EUO was duplicative of the deposition that will surely be taken during litigation."

---

[7] A "condition precedent" is "a fact or event that the parties intend must take place before there is a right to performance" under the contract. *Yeo*, 219 Mich App at 257.

6) State Farm responded: "Okay thanks – has suit been filed yet? Thanks and have a good one[.]"

These communications form the basis of Gueye's waiver argument.

A waiver is an "intentional relinquishment of a known right." *Reed Estate v Reed*, 293 Mich App 168, 176; 810 NW2d 284 (2011) (quotation marks and citations omitted). Waiver "may be shown by express declarations or by declarations that manifest the parties' intent and purpose." *Id.* (quotation marks and citations omitted). In other words, "[a] waiver may be shown by proof of express language of agreement or inferably established by such declaration, act, and conduct of the party against whom it is claimed as are inconsistent with a purpose to exact strict performance." *HJ Tucker & Assoc v Allied Chucker & Engineering Co*, 234 Mich App 550, 564; 595 NW2d 176 (1999) (quotation marks and citation omitted).

Gueye failed to establish that State Farm expressly agreed to waive its contractual rights or made a declaration that inferred an intent to waive strict performance of the contract. Gueye repeatedly claims State Farm admitted the EUO was unnecessary, but a review of the e-mail communications above reveals no such admission. If anything, State Farm's communications reflect only (1) its attempts to offer Gueye a chance to submit to an EUO and (2) its unanswered inquiry into whether Gueye had filed his lawsuit yet. Neither of these communications expressly or impliedly establish an intent by State Farm to waive the EUO requirement. Indeed, State Farm's repeated attempts to schedule an EUO before Gueye filed suit would suggest otherwise.

Gueye attempts to characterize State Farm's final e-mail response as silence, arguing that such silence impliedly established assent to Gueye's position, but State Farm's response does not qualify as silence. It was merely a question about Gueye's potential lawsuit. Gueye also argues that State Farm's failure to issue another request for an IME or EUO after the e-mail communications above suggests that State Farm had tacitly accepted Gueye's waiver argument and was waiting for the lawsuit. But this argument assumes State Farm's motives without evidence for doing so.

Gueye also references the word "reasonably" in the EUO provision of the insurance contract, arguing that the EUO was not "reasonably" sought given the arbitrary nature of the scheduling process and State Farm's alleged unwillingness to accommodate his absence from the country. But the language of the insurance contract reveals that Gueye misconstrues the meaning of "reasonably." The insurance contract states, in relevant part: "[E]ach *insured*, or any other *person* or organization making claim or seeking payment . . . must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require." Thus, State Farm is not required to schedule the EUO "reasonably" based on Gueye's schedule or location; rather, the word "reasonably" refers to the frequency of State Farm's requests for an EUO. Gueye's interpretation of this language is therefore incorrect.

Finally, Gueye claims State Farm was the first to breach the insurance contract by denying his request for no-fault benefits, thereby relieving him of any obligations he might have had under the insurance contract. This argument falls short, however, for the simple reason that Gueye was the first party to breach the insurance contract. The undisputed facts show that Gueye did not appear for the requested September 16, 2020 IME before State Farm denied his request for no-

fault benefits. For all these reasons, the trial court did not err in dismissing Gueye's claim for UM/UIM benefits.

Although we agree that the trial court properly dismissed Gueye's claim for UM/UIM benefits, the trial court did not specify whether dismissal was with or without prejudice. In *Thomson v State Farm Ins Co*, 232 Mich App 38, 45; 592 NW2d 82 (1998), this Court addressed whether the failure to comply with an EUO policy provision should result in dismissal with or without prejudice. The *Thomson* Court held: "[I]f the noncompliance is wilful, the dismissal must be with prejudice; if the noncompliance is not wilful, the dismissal must be without prejudice." *Id*. at 55. This Court explained that willful noncompliance "involves something more than merely knowingly failing to appear for an EUO." *Id*. at 46. Instead, willful noncompliance in this context means

> . . . [A] failure or refusal to submit to an EUO or otherwise cooperate with an insurer in regard to contractual provisions allowing an insurer to investigate a claim that is part of a *deliberate* effort to withhold material information or a *pattern of noncooperation* with the insurer. [*Id*. at 50.]

Consistent with *Thomson*, we direct the trial court, on remand, to determine whether dismissal of Gueye's UM/UIM claim should be with or without prejudice. We otherwise affirm the trial court's order of dismissal as to the UM/UIM claim.

## III. NO-FAULT BENEFITS

Gueye also argues that the trial court erred in dismissing his claim for no-fault benefits and contends that the trial court should have, at the very least, chosen a more "just" sanction for Gueye's missed IME.

## A. STANDARD OF REVIEW

We review the trial court's decision to dismiss an action for an abuse of discretion. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). The trial court abuses its discretion when it chooses an outcome outside the range of principled outcomes. *Id*. Any factual findings underlying the trial court's decision are reviewed for clear error. *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 660; 819 NW2d 28 (2011). "A finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

Unlike UM/UIM benefits, no-fault benefits are statutorily required by the no-fault act. MCL 500.3105; *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 524-525; 502 NW2d 310 (1993). Two portions of the no-fault act are particularly relevant to the examination of Gueye's second issue on appeal. First, MCL 500.3151(1) states:

> If the mental or physical condition of a person is material to a claim that has been or may be made for past or future personal protection insurance benefits, at

the request of an insurer the person *shall submit to mental or physical examination by physicians*. A personal protection insurer may include reasonable provisions that are in accord with this section in a personal protection insurance policy for mental and physical examination of persons claiming personal protection insurance benefits. [Emphasis added.]

Second, MCL 500.3153 states, in relevant part:

A court may make such orders in regard to the refusal to comply with sections 3151 and 3152[8] *as are just*, except that an order shall not be entered directing the arrest of a person for disobeying an order to submit to a physical or mental examination. The orders that may be made in regard to such a refusal include, but are not limited to:

(a) An order that the mental or physical condition of the disobedient person shall be taken to be established for the purposes of the claim in accordance with the contention of the party obtaining the order.

(b) An order refusing to allow the disobedient person to support or oppose designated claims or defenses, or prohibiting him from introducing evidence of mental or physical condition.

(c) An order rendering judgment by default against the disobedient person as to his entire claim or a designated part of it.

(d) An order requiring the disobedient person to reimburse the insurer for reasonable attorneys' fees and expenses incurred in defense against the claim.

(e) An order requiring delivery of a report, in conformity with section 3152, on such terms as are just, and if a physician fails or refuses to make the report a court may exclude his testimony if offered at trial. [Emphasis added.]

In other words, "[t]o allow for enforcement, should it be needed, the Legislature, in [MCL 500.5153], authorized *sanctions* against an insured who refuses to submit to an examination, including dismissal of the insured's claim and an award of reasonable attorneys fees against the insured." *Muci v State Farm Mut Auto Ins Co*, 478 Mich 178, 188-189; 732 NW2d 88 (2007) (emphasis added).

Further, "[t]rial courts possess the inherent authority to sanction litigants and their counsel, including the right to dismiss an action." *Maldonado*, 476 Mich at 388. "MCR 2.313(B)(2)(c) explicitly authorize[s] a trial court to enter an order dismissing a proceeding or rendering a judgment by default against a party who fails to obey an order to provide discovery." *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 86; 618 NW2d 66 (2000) (quotation marks and citation

---

[8] Section 3152 governs an examining physician's written reports of a mental or physical examination. MCL 500.3152.

omitted). And dismissal of a lawsuit is a potential statutory sanction for failing to attend scheduled IMEs. *Muci*, 478 Mich at 188-189; MCL 500.3153(c). But "[o]ur legal system is also committed to a countervailing policy favoring disposition [of] litigation on the merits." *North v Dep't of Mental Health*, 427 Mich 659, 662; 397 NW2d 793 (1986). Thus, dismissal is considered a drastic step that should be imposed with caution. *Swain v Morse*, 332 Mich App 510, 518; 957 NW2d 396 (2020).

Trial courts should consider the following nonexhaustive factors before imposing the severe sanction of dismissal:

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice. [*Vicencio v Ramirez*, 211 Mich App 501, 507; 536 NW2d 280 (1995), citing *Dean v Tucker*, 182 Mich App 27, 32-33; 451 NW2d 571 (1990).]

Before dismissing a case, "the trial court is required to carefully evaluate all available options on the record and conclude that the sanction of dismissal is just and proper." *Vicencio*, 211 Mich App at 506. The trial court must also explain its reasons for dismissal on the record "in order to allow for meaningful appellate review." *Kalamazoo Oil Co*, 242 Mich App at 88.

The trial court dismissed Gueye's no-fault PIP claim under MCR 2.116(C)(10), but "MCR 2.116 is not a rule of sanction." *Brenner v Kolk*, 226 Mich App 149, 155; 573 NW2d 65 (1997). Unlike Gueye's claim for UM/UIM benefits, which involved enforcement of a contract, we conclude that the proper lens for reviewing dismissal of a no-fault claim for failure to comply with the statutory IME requirement is the traditional analysis for dismissal as a discovery sanction. Recent unpublished decisions of our Court have reached the same conclusion.[9]

In *Drew v Nationwide Mut Fire Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued August 18, 2022 (Docket No. 358546), pp 1-2, this Court decided the issue before us: an appeal of a trial court's order granting the defendant's motion to dismiss for the plaintiff's failure to attend scheduled IMEs in violation of MCL 500.3151. Following a long line of caselaw discussing the required analysis when dismissing a case as a sanction, this Court held that "the trial court was, as a proper exercise of its discretion, required to evaluate alternative sanctions or evaluate all options on the record before it dismissed plaintiff's claim." *Id*. at 6. The Court expressly rejected the notion that a dismissal for failure to appear for an IME should be reviewed differently than a dismissal involving traditional discovery violations:

> While defendant suggests that prior cases from this court involved discovery violations and did not exclusively involve a plaintiff's failure to submit for an IME,

---

[9] Although unpublished decisions of this Court are not precedentially binding, we may consider them for their persuasive value. *Whitmer v Bd of State Canvassers*, 337 Mich App 396, 408 n 3; 976 NW2d 75 (2021); MCR 7.215(C)(1).

we see no reason to depart from the long line of cases holding that an abuse of discretion occurs when a court fails to place its reasoning and consideration of alternative sanctions on the record. [*Id*.]

The *Drew* Court was also unpersuaded by the defendant's argument that "because this was a statutory violation under the no-fault act, and not merely a discovery violation," the trial court did not have to consider alternative sanctions other than dismissal. *Id*. at 5.[10] We find *Drew* highly persuasive and adopt its analysis.[11]

Additionally, we are unconvinced that this case, which involved a pre-litigation missed IME,[12] should be treated differently than *Drew*, which involved a failure to appear for multiple IMEs scheduled during litigation. Importantly, the application of MCL 500.3151 does not depend on ongoing litigation. See *Muci*, 478 Mich at 190. In *Muci*, our Supreme Court held that in a no-fault case, provisions of the no-fault act govern the conditions that may be placed on an IME. *Id*. at 194. The Supreme Court rejected the application of MCR 2.311—the court rule generally covering IMEs in civil litigation—to no-fault claims, explaining that while "the court rule requires pending litigation and the insurer to show good cause, . . . [MCL 500.3151] does not have these requirements." *Id*. at 182, 190.

On the other hand, MCL 500.3153, by authorizing court orders for noncompliance with MCL 500.3151, only comes in effect once litigation is underway. And MCL 500.3153 provides that a trial court's order must be "just." This inclusion of a requirement to only enter orders "as are just" suggests that, when entering an order under MCL 500.3153, the trial court must consider

---

[10] See also *Hogue v Auto Club Group Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued June 4, 2020 (Docket No. 347317), p 4 (holding that the trial court must carefully consider alternative sanctions for failure to submit to an IME before imposing dismissal); *Lippett v Cincinnati Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued May 20, 2021 (Docket No. 352373), pp 5-8.

[11] We are mindful that neither party fully analyzed this matter under the framework discussed in *Drew*. But Gueye has consistently argued that dismissal of his no-fault claim was not a "just" sanction as required by MCL 500.3153, and that less severe sanctions are appropriate. In any event, it is our duty to determine whether the trial court erred, and we cannot do so by applying the incorrect legal analysis. See *Mack v Detroit*, 467 Mich 186, 207; 649 NW2d 47 (2002) ("[A]ddressing a controlling legal issue despite the failure of the parties to properly frame the issue is a well understood judicial principle."). Thus, even if Gueye failed to properly preserve this argument, we consider it because of its necessity to the resolution of the case. See *Duffy v Dep't of Natural Resources*, 490 Mich 198, 209 n 3; 805 NW2d 399 (2011) ("When consideration of a claim sought to be raised is necessary to a proper determination of a case, the rule that unpreserved issues are waived will not be applied.") (quotation marks, citation, and alterations omitted).

[12] The parties have at times characterized Gueye as failing to attend two pre-litigation IMEs; this presumably includes the October 28, 2020 scheduled IME that Gueye's counsel advised State Farm that Gueye could not attend because he was out of the country. Regardless of whether Gueye missed one or two pre-litigation IMEs, our analysis is unchanged.

a range of factors. This is particularly true when the trial court seeks to impose the severe sanction of dismissal; the trial court's analysis should go beyond a simple yes-or-no finding that an insured did not attend an IME. Put differently, before dismissing a no-fault claim under MCL 500.3153, the trial court should "carefully evaluate all available options on the record and conclude that the sanction of dismissal is just and proper." *Vicencio*, 211 Mich App at 506. We recognize that the missed IME in this case was not a *discovery* violation, because litigation had not yet begun. But the discretionary language of MCL 500.3153, together with the analysis from *Drew*, shows that the legal framework for reviewing dismissals as a discovery sanction is the best analogue to the circumstances before us. Accordingly, before dismissing a no-fault claim under MCL 500.3153, a trial court should consider the applicable *Vicencio* factors, including the availability of alternative sanctions, and decide whether dismissal is just.[13]

Here, the trial court did not properly analyze whether dismissal of Gueye's no-fault claim for failure to attend IMEs was a just and proper sanction. The trial court simply ruled:

> Plaintiff's failure to submit to an IME or to an EUO as required by MCL 500.3151 and MCL 500.3153 respectively,[14] preclude Plaintiff from receiving benefits. Each section requires the Plaintiff to submit to examinations to be entitled to PIP benefits. The Plaintiff has submitted to neither the IME nor the EUO.

The trial court's analysis implies that dismissal was mandatory under the circumstances, but the no-fault act establishes that is not so. As noted above, MCL 500.3153 provides a nonexhaustive list of five orders that a trial court may enter to sanction a plaintiff for failure to attend IMEs, with only one option being the dismissal of the claim in whole or in part. See MCL 500.3153(c).

On remand, the trial court should consider the applicable factors discussed in *Vicencio* to determine whether the sanction of dismissal is appropriate for Gueye's no-fault claim. This includes "the party's history of refusing to comply with previous court orders." *Vicencio*, 211 Mich App at 507. From our review of the record, it does not appear that State Farm ever moved to compel Gueye's attendance at an IME once litigation began. While noncompliance with a court order compelling attendance at an IME is not required to dismiss the case, whether any court orders

---

[13] Our holding does not leave insurers without remedy for an insured's breach of the statutory duty to submit to IMEs under MCL 500.3151. Sanctions, including dismissal, remain available under MCL 500.3153 once litigation is underway. And "where a claimant repeatedly breaches his or her statutory duty to submit to IMEs, an insurer may properly suspend benefits pending completion of any requisite IME." *Roberts v Farmers Ins Exch*, 275 Mich App 58, 69; 737 NW2d 332 (2007).

[14] The trial court erroneously stated that MCL 500.3151 requires submission to an EUO. The no-fault act is silent about EUOs. *Cruz*, 466 Mich at 594. Thus, unlike EUO provisions governing UM/UIM claims, an EUO provision in a no-fault policy is invalid when it "contravenes the requirements of the no-fault act by imposing some greater obligation upon one or another of the parties." *Id*. at 598. See also *Meemic Ins Co v Fortson*, 506 Mich 287, 302; 954 NW2d 115 (2020). This case does not require us to decide whether noncompliance with State Farm's EUO provision was a proper basis for dismissing Gueye's no-fault claim because State Farm relies solely on the statutory IME requirement.

-11-

were violated is a proper consideration on remand. The *Vicencio* factors also include "whether a lesser sanction would better serve the interests of justice." *Id.* In analyzing this factor, the trial court should "carefully evaluate all available options on the record," *id.* at 506, including, in this case, consideration of the options specifically provided for by the Legislature under MCL 500.3153. Whether dismissal ultimately proves to be the appropriate resolution is for the trial court to decide.

## IV. CONCLUSION

For Gueye's UM/UIM claim, we affirm this portion of the trial court's order of dismissal because the insurance contract governs this coverage and requires compliance with a requested EUO and IME before filing suit. But we remand for the trial court to determine whether dismissal of the UM/UIM claim should be with or without prejudice. For Gueye's no-fault claim, we vacate this portion of the trial court's order of dismissal and remand for further proceedings under the proper analysis for dismissing a case under MCL 500.3153.

We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Mark J. Cavanagh
/s/ Christopher P. Yates